342 S.E.2d 138

**STATE of West Virginia**

v.

**Bernard HUTCHINSON.**

No. 16551.

Supreme Court of Appeals of West Virginia.

April 4, 1986.

William D. Highland, Public Legal Services, Charleston, for appellant.

Atty. Gen. Charlie Brown, Deputy Atty. Gen. Silas B. Taylor, Charleston, for appellee.

McHUGH, Justice:

Bernard Hutchinson appeals from his conviction in the Circuit Court of Monongalia County of non-aggravated robbery. The appellant was indicted for aggravated robbery in January of 1983. Following a three-day trial in October of 1983, he was convicted of non-aggravated robbery. The trial judge sentenced the appellant to a term of five to eighteen years in the state penitentiary.

There are two assignments of error. First, the appellant contends that his lawyer's failure to object to an unconstitutional alibi instruction constituted ineffective assistance of counsel. Second, the appellant contends that a pre-trial voice identification should have been suppressed on the ground that the appellant was asked by police to give a voice sample after he had requested to speak with a lawyer.

## I

Nelson Lott, an attendant at Laishley's Exxon service station in Westover, was closing the station for the night at approximately 11 p.m. on December 22, 1981. He was carrying a metal box containing cash and credit receipts. A man concealing himself behind a Coke machine called out to Lott to drop the box. When Lott did not drop the box, the hidden figure rattled some chains on a U-Haul trailer and said, "Drop the box or I will blow your head off." Lott then placed the box on the fender of a car parked on the lot and walked away. Glancing back, he caught sight of a man standing next to the box. Because it was dark and Lott by then was some distance away he was unable to get a good look at this individual. However, Lott told the police that the robber was bearded and wore coveralls and a red hat, possibly a ball cap. The robber took the metal box and fled from the scene. Lott later made a statement and also testified at the appellant's trial that he thought he recognized the voice as that of the appellant. He was acquainted with the appellant who had previously worked for a short time at Laishley's Exxon.

David Rodgers, a news photographer, was standing outside a laundromat in the vicinity of the gas station at about 11:05 p.m. on the night of the robbery. He saw a man run through the laundromat's parking lot, whom he described as 40 years old, balding, clean shaven, and husky. The man wore baggy pants, a short-waisted coat and was hatless. Rodgers said the pants were definitely not blue jeans. He was carrying a box that made a rattling sound and an object that appeared to be a club. The area was well-lit and Rodgers was able to observe him for about 30 seconds. At the trial, Rodgers positively identified the appellant as the man he saw running that night.

A red toboggan cap, a shotgun, and the stolen metal box, containing $971.78 were found by police officers two blocks from the gas station. Police officers searching the area also saw the appellant who explained to them that his car had broken down and that he was on his way home to get some tools. One officer reported that the appellant was wearing blue jeans and a green coat. After being briefly questioned, the appellant continued on his way.

The appellant's car was seen parked not far from the Exxon station. Two officers looked through the windows and saw shotgun shells, tool boxes and clothing. By this time, the police were informed that Rodgers had picked appellant's photograph from a photo array. The car was impounded and towed to the police station.

The appellant testified at trial that he had been at home watching television with his wife and children until shortly after the 11 o'clock news came on. He then decided to drive to a local tavern for a beer. On the way his car broke down. He left it parked and started to walk home to get

some tools. He encountered a police officer to whom he explained his presence in the area. A friend picked him up and drove him the rest of the way home. Returning to work on his car, he found it gone. He called the police station, was informed that it had been towed and that he could come in to recover it. When he arrived at the police station, he was given *Miranda* warnings. He answered questions about his whereabouts that evening and then participated in a line-up and voice identification procedure. He was not arrested at that time and was permitted to leave. The appellant's wife and stepson both corroborated the appellant's testimony that he did not leave home until after 11:00 p.m.

## II

The appellant relied on the defense of alibi. He requested that the following instruction be given to the jury:

The Court instructs the jury in this case the defendant is relying upon a defense of alibi. The Court instructs the jury further that although the burden is upon the defendant to prove his alibi, he does not have to prove it beyond a reasonable doubt, nor must he prove it by a preponderance of the evidence, but rather, he must prove his alibi by such evidence, and to such a degree of certainty, as will, when the whole evidence is considered, create and leave in the mind of the jury a reasonable doubt as to the guilt of the accused. Therefore, if, after considering all of the evidence of this case, you have a reasonable doubt as to whether or not the defendant was the party who committed the offense charged, you must return a verdict of not guilty.

The trial judge did not give the requested alibi instruction. Rather, he gave his own instruction, referred to by the judge as the "recommended alibi instruction," which was almost precisely in the language approved in syllabus point 2 of *State v. Alexander*, 161 W.Va. 776, 245 S.E.2d 633 (1978).

The court's instruction read as follows:

The court instructs the jury that where the State has established a prima facie case and the defendant relies upon the defense of alibi, the burden is upon him to prove it, not beyond a reasonable doubt, nor by a preponderance of the evidence, but by such evidence, and to such a degree of certainty, as will, when the whole evidence is considered, create and leave in the mind of the jury a reasonable doubt as to the guilt of the accused.

In *Adkins v. Bordenkircher*, 674 F.2d 279 (4th Cir.1982) *cert. denied*, 459 U.S. 853, 103 S.Ct. 119, 74 L.Ed.2d 104 (1982), the Fourth Circuit Court of Appeals ruled that the *Alexander* instruction offended the Federal Constitution by shifting to the defendant the burden of persuasion with respect to an essential element of the offense charged, namely, presence at the scene of the crime. Following *Adkins v. Bordenkircher*, we overruled *State v. Alexander* in *State v. Kopa*, 173 W.Va. 43, 311 S.E.2d 412 (1983). The *Alexander* instruction was again found to be constitutional error in *State v. Collins*, 174 W.Va. 767, 329 S.E.2d 839 (1984). The appellant's trial occurred in the interim between *Adkins* and *Kopa*.

The appellant contends that his trial counsel was ineffective by failing to adequately research the validity of the *Alexander* alibi instruction. A reasonably competent counsel, argues the appellant, would have discovered the Fourth Circuit's opinion in *Adkins v. Bordenkircher* and thus would neither have offered nor failed to object to an *Alexander*-type instruction.

■ Our standard for evaluating a claim of ineffective assistance of counsel is set forth in syllabus point 19 of *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974):

In the determination of a claim that an accused was prejudiced by ineffective assistance of counsel violative of Article III, Section 14 of the West Virginia Constitution and the Sixth Amendment to the United States Constitution, courts should measure and compare the questioned counsel's performance by whether he ex-

hibited the normal and customary degree of skill possessed by attorneys who are reasonably knowledgeable of criminal law, except that proved counsel error which does not affect the outcome of the case, will be regarded as harmless error.

The *Thomas* standard comports with the performance and prejudice test recently enunciated by the United States Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, *reh'g denied,* 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984). *See State ex rel. Levitt v. Bordenkircher,* 176 W.Va. 162 at 168–169, 342 S.E.2d 127 at 134 (1986).

In *State v. Mullins,* 171 W.Va. 542, 301 S.E.2d 173 (1982), we applied the *State v. Thomas* standard and concluded that counsel's failure to object to an improper self-defense instruction did not constitute ineffective assistance, notwithstanding the fact that the infirmity in the instruction had been discussed in *State v. Kirtley,* 162 W.Va. 249, 252 S.E.2d 374 (1978), several months prior to Mullins' trial. The instructional defect was not based on constitutional due process principles. 162 W.Va. at 263, 252 S.E.2d at 381.

■ We do not believe that counsel's failure to discover and apply the teachings of *Adkins v. Bordenkircher* constituted ineffective assistance of counsel. *State v. Alexander* was the controlling law in this State with regard to the burden of proof in an alibi instruction. *Alexander* rested on a well-established chain of precedent. The prescience of trial counsel in *State v. Kopa* and *State v. Collins,* who objected to *Alexander* instructions, even without the benefit of *Adkins v. Bordenkircher,* does not mean that the appellant's trial counsel performed at a level of skill below that of the reasonably competent criminal lawyer. The U.S. Circuit Court of Appeals for the Fifth Circuit has recently said:

[A] failure of counsel to be aware of *prior* controlling precedents in even a single prejudicial instance *might* render counsel's assistance ineffective under the Sixth Amendment. However, counsel is normally not expected to foresee future new developments in the law or for that matter to research parallel jurisdictions—federal rules of evidence in preparation for a state proceeding.

(emphasis in original). *Nelson v. Estelle,* 642 F.2d 903, 908 (5th Cir.1981).

The same precedents relied on by the *Alexander* court were cited approvingly by this Court in *State v. Pendry,* 159 W.Va. 738, 755, 227 S.E.2d 210, 221 (1976), a seminal case dealing with burden-shifting instructions. At the time of appellant's trial, *State v. Alexander, supra* was the most recent pronouncement of this Court with respect to the challenged alibi instruction. *State v. Alexander* specifically held that the instruction was valid under *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). *See also State v. Ayers,* 168 W.Va. 137, 282 S.E.2d 876 (1981) (instruction placing burden of proof on defendant to establish alibi was proper). Counsel's failure to look beyond *State v. Alexander* did not constitute ineffective assistance. Since we conclude that trial counsel's performance was not deficient, we need not determine whether the alleged ineffective assistance affected the outcome of the trial.

### III

In *Adkins v. Bordenkircher, supra,* the Fourth Circuit, relying on *Spaulding v. Warden,* 158 W.Va. 557, 212 S.E.2d 619 (1975), presumed that this Court would notice "plain error" in the giving of an *Alexander*-type alibi instruction. The State urges us to address the issue of the consequences of failing to comply with the contemporaneous objection rule, W.Va. R.Crim.P. 30.[1] The appellant does not ask

---

1. W.Va.R.Crim.P. 30 provides in pertinent part: No party may assign as error the giving or the refusal to give an instruction or to the giving of any portion of the charge unless he objects thereto before the arguments to the jury are begun, stating distinctly the matter to which

he objects and the grounds of his objection; but the court or any appellate court may, in the interest of justice, notice plain error in the giving or refusal to give an instruction, whether or not it has been made the subject of objection....

us to notice "plain error" in the giving of the invalid alibi instruction.

■ Under Rule 30, we may, *sua sponte*, in the interest of justice, notice plain error in the giving of an erroneous instruction in the absence of a proper and timely objection.

In the Fourth Circuit's view, this Court invariably treats the giving of an unconstitutional instruction, where there was no objection at trial, as plain error. In *Jones v. Warden*, 161 W.Va. 168, 172–73, 241 S.E.2d 914, 916 (1978), we declined to enforce the contemporaneous objection rule and elected to reach the merits of a challenge to an instruction declared unconstitutional in *State v. Pendry, supra* and *Mullaney v. Wilbur, supra*. We reasoned: "Safeguarding the integrity of the fact-finding process must take priority over procedural concerns such as whether a trial lawyer could perceive future United States Supreme Court rulings and object to acts or instructions on the basis of constitutional infirmities yet unborn."

It is implicit in decisions of this Court that the Fourth Circuit takes us further than we have desired to go in its perception of our application of the contemporaneous objection rule to potential errors of constitutional magnitude. Recently we refused to address a claimed error in the cross-examination of a criminal defendant related to his post-arrest silence. *State v. Acord*, 175 W.Va. 611, 336 S.E.2d 741, 745 (1985). Although the error may have been of constitutional dimension, *State v. Boyd*, 160 W.Va. 234, 233 S.E.2d 710 (1977); *State v. Oxier*, 175 W.Va. 760, 338 S.E.2d 360 (1985); *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), we did not address the issue in *State v. Acord, supra*, because of the failure to object.

Yet more significant is the conclusion in *State v. Kopa*, 173 W.Va. at 52, 311 S.E.2d at 421 that the *Alexander* instruction did not substantially impair the truth-finding function of the trial and thus differed from the *Pendry-Mullaney* instructions to which the "plain error" doctrine will be applied. *See Jones v. Warden, supra*, 161 W.Va. at 173, 241 S.E.2d at 916. Our decision that *State v. Kopa* would have retroactive application only to cases in litigation or on appeal where the error has been properly preserved at trial, 173 W.Va. at 53, 311 S.E.2d at 422, was tantamount to a requirement that trial error in the giving of an *Alexander* instruction is subject to the contemporaneous objection rule. We do not recognize "plain error," even of constitutional magnitude, in the giving of an instruction that does not substantially impair the truth-finding function of the trial.[2]

In particular, we hold that although this Court may, under Rule 30 of the West Virginia Rules of Criminal Procedure, notice plain error in the giving of an erroneous instruction (in the absence of a proper and timely objection at trial), this Court will not ordinarily recognize plain error under such circumstances, even of constitutional magnitude, where the giving of the erroneous instruction did not substantially impair the truth-finding function of the trial.

### IV

After he arrived at the police station, the appellant was given *Miranda* warnings. He signed a waiver of his right to counsel and agreed to speak with the police officers. Soon thereafter, he was asked if he was willing to take a polygraph examination. The appellant replied that he did not want to subject himself to a polygraph test without first talking to a lawyer. He was then asked to give a voice sample by speaking certain words through an open doorway. Upon hearing the appellant speak, Nelson Lott was unable to positively iden-

---

**2.** For a parallel situation, see *People v. Woods*, 416 Mich. 581, 331 N.W.2d 707 (1982), *cert. denied* 462 U.S. 1134, 103 S.Ct. 3116, 77 L.Ed.2d 1370 (1983) (Supreme Court of Michigan holds that *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), would be retroactively applied to cases where error in giving *Sandstrom* instruction was properly raised and preserved); and *McBee v. Grant*, 763 F.2d 811 (6th Cir.1985) (U.S. Court of Appeals for the Sixth Circuit infers that Supreme Court of Michigan requires a contemporaneous objection to preserve a *Sandstrom* error.)

tify the appellant's voice as that of the man who robbed him. However, the next day he gave a statement to the police that the voices were the same.

The appellant made a pre-trial motion to suppress evidence of the out-of-court voice identification and also to prohibit an in-court identification of the appellant by Lott based on voice identification. The basis of the motion was the appellant's invocation of his right to counsel that rendered inadmissible the fruits of any subsequent interrogation. Following a hearing, the trial judge ruled that the evidence of the voice identification was admissible because the request for counsel was linked solely to the potential polygraph examination, so that the written waiver of counsel was still operative.

■ The general rule concerning the propriety of police conduct following the request by a suspect in custody to be represented by counsel is stated in syllabus point 1 of *State v. McNeal*, 162 W.Va. 550, 251 S.E.2d 484 (1978):

> Once a suspect in custody has expressed his clear, unequivocal desire to be represented by counsel, the police must deal with him as if he is thus represented. Thereafter, it is improper for the police to initiate any communication with the suspect other than through his legal representative, even for the limited purpose of seeking to persuade him to reconsider his decision on the presence of counsel.

*See also* syl. pt. 1, *State v. Louk*, 171 W.Va. 639, 301 S.E.2d 596 (1983).

The purpose of this prophylactic rule, based on *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966), is to protect the accused's privilege against self-incrimination. *See Moran v. Burbine*, 475 U.S. 412, 420, 106 S.Ct. 1135, 1140, 89 L.Ed.2d 410, 415 (1986). In *State v. McNeal, supra*, 162 W.Va. at 554, 251 S.E.2d at 487, we relied on the holding in *Miranda v. Arizona, supra* that "[i]f the individual states that he wants an attorney, the interrogation must cease until an attorney is present." In *Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), the Unit-

ed States Supreme Court, in exploring the parameters of "interrogation," concluded:

> that the *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response [footnote omitted] from the suspect. [footnote omitted] ... A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. [footnote omitted]

446 U.S. at 300–01, 100 S.Ct. at 1689–90, 64 L.Ed.2d at 307–08.

■ The request to give a voice sample for the purpose of identification does not implicate the privilege against self-incrimination, *U.S. v. Dionisio*, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973), and does not constitute a proscribed interrogation.

The Fifth Amendment right identified in *Miranda* is the right to have counsel present at any custodial interrogation. Absent such interrogation, there would have been no infringement of the right that Edwards invoked and there would be no occasion to determine whether there had been a valid waiver. *Rhode Island v. Innis, supra*, makes this sufficiently clear. 446 U.S., at 298, n. 2, 100 S.Ct., at 1688, n. 2. [footnote omitted]

*Edwards v. Arizona*, 451 U.S. 477, 485–6, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378, 387 (1981).

Therefore, the trial court did not err in ruling that evidence of the voice identification was admissible.

Finding no error, we affirm the conviction.

Affirmed.