370 S.E.2d 480

**STATE of West Virginia**

v.

**John Bert FISHER.**

**No. 17886.**

Supreme Court of Appeals of West Virginia.

June 3, 1988.

Ronald J. Flora, Bassett & Flora, Milton, for John Bert Fisher.

Mary Rich Maloy, Asst. Atty. Gen., Charleston, for appellee.

PER CURIAM:

This is an appeal by John Bert Fisher from a conviction in the Circuit Court of Cabell County for possession with intent to distribute a controlled substance in violation of W.Va.Code, 60A–4–401. The defendant, who relied upon an alibi defense at trial, makes two assignments of error. He contends the prosecuting attorney violated his constitutional rights by cross-examining him about the fact that he remained silent after his arrest. Second, the defendant seeks a reversal of his conviction on the ground that the trial court gave an unconstitutional burden-shifting alibi instruction. Finding no grounds for reversal, we affirm the defendant's conviction.

## I.

The State's case against the defendant was that he had driven a Cadillac from Huntington, West Virginia, to Michigan, where he sold the car and purchased 1,047 Methaqualone (Quaalude) tablets. He then shipped a package containing the drugs back to Huntington by Greyhound bus and returned to Huntington on an airline flight, where he was apprehended after picking up the package at the bus station.

The State's proof included the following evidence. The clerk at the Greyhound bus

station in Lincoln Park, Michigan, where the package was shipped on the morning of Saturday, March 14, 1981, positively identified the defendant as the person who shipped the package. The clerk had previously picked out the defendant from a photographic array containing ten photographs. On rebuttal, the State presented a witness from Michigan who testified that she had been present at a residence in Michigan where she had observed the defendant packaging the drugs for shipment. The State also introduced evidence showing that an airline ticket sold to one "J. Fisher" had been used on a flight that arrived in Huntington from Michigan on Saturday evening.

The package containing the drugs was addressed to one Maurice McComas. When the defendant picked up the package at the Huntington bus station on Sunday, March 15, 1981, he identified himself as Maurice McComas. He was immediately arrested by the police, who had staked out the bus station after receiving a tip through the Michigan state police. The defendant had driven to the bus station with a passenger who was also arrested as he attempted to leave the scene. His name was Richard Maurice E. Sanson, alias Maurice McComas. He was jointly indicted

with the defendant for possession with intent to distribute and did not testify at trial.

The defendant testified on his own behalf at trial that he had not been in Michigan when the package had been shipped and presented witnesses, including his son and the son's girlfriend, to support his alibi defense. The defendant offered an exculpatory story to explain why he had picked up the package in Huntington. He explained that Maurice McComas, a friend of his son, had stopped by his residence seeking a ride to the bus station. Since his son was not at home, he agreed to drive Mr. McComas to the station. When they arrived at the station, Mr. McComas discovered that he had no identification with him. The defendant agreed to pick up the package since he did have proper identification.

## II.

■ The defendant's first contention is that the prosecuting attorney's cross-examination about his exculpatory testimony was reversible error. The State acknowledges the prosecutor improperly attempted to impeach the defendant's trial testimony by cross-examining him about his post-arrest silence.[1] The State, nonetheless, ar-

---

1. The questions put to the defendant on cross-examination about his post-arrest statements and his responses are as follows:

"Q How long were you with the police officers that evening after you were arrested?
"A Several hours.
"Q Did you ever say, 'Hey, Guys, this is crazy. This is a mistake.' Did you ever tell them that?
"A I don't know.
"Q Have you ever—now, this occurred in March. Have you ever since March told anyone this was a mistake?
"A A lot of people.
"Q Have you ever told any plice [sic] officers that it was a mistake?
"A I really don't know if I have or not. I haven't been talking to very—
"Q Did you tell any police officer on the 15th, 'Hey, Guys, all I was doing was coming in and picking up this package which had one thousand Quaaludes or whatever in it for Maurice McComas?'
"MR. CHAMBERS: I will object to the leading question. I think he's asking it for prior admissions of the defendant.

"THE COURT: I don't—I will let him ask that question. Go ahead. (Exception.)
"Q Did you ever tell any police officer that on March 15th?
"A I don't know, sir. I remember very little after this arrest for the next few hours.
　　*　　*　　*　　*　　*　　*
"Q When you found out there was one thousand and forty-seven Quaaludes in the box that you picked up for Maurice McComas, didn't you say, 'Hey, Guys, I was just picking it up for Maurice McComas.'
"A I possibly could have. Like I told you, I don't remember. I just don't remember what happened after I was arrested. It was rather hectic the next couple of hours, and by that I don't mean I was mistreated in any way."
Our review of the record also reveals two other instances when the prosecutor inquired about whether the defendant had said anything when he was arrested. The prosecutor asked the two members of the Huntington police department who were involved in arresting the defendant at the bus station whether the defendant had made any statement. One member replied in the neg-

gues that reversal is not required for two reasons.

First, the State maintains the defendant did not properly preserve the error for appellate review because he did not object on constitutional grounds, but only on the basis that the question was leading. The State also argues that the error was harmless, pointing out that the prosecutor neither stressed nor explicitly argued that the defendant's alibi defense should not be believed because he failed to raise the defense immediately upon his arrest.

■We held in *State v. Boyd*, 160 W.Va. 234, 233 S.E.2d 710 (1977), in reliance on *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), that it is a due process violation to impeach a defendant with his pretrial silence. Based on our own Constitution, we stated in Syllabus Point 1 of *Boyd*:

> "Under the Due Process Clause of the West Virginia Constitution, Article III, Section 10, and the presumption of innocence embodied therein, and Article III, Section 5, relating to the right against self-incrimination, it is reversible error for the prosecutor to cross-examine a defendant in regard to his pre-trial silence or to comment on the same to the jury."

In *State v. Oxier*, 175 W.Va. 760, 338 S.E.2d 360 (1985), we reversed the defendant's conviction where the prosecutor had commented extensively, without objection, upon the defendant's post–*Miranda* silence in closing argument. We recognized in *Oxier* that the doctrine of plain error could be utilized, citing Syllabus Point 4 of *State v. Starr*, 158 W.Va. 905, 216 S.E.2d 242 (1975).[2]

■However, we have recently stated in Syllabus Point 4 of *State v. Grubbs*, 178 W.Va. 811, 364 S.E.2d 824 (1987), that the plain error doctrine is reserved for cases where a miscarriage of justice would result if this Court did not consider and correct the error despite the absence of an objection:

> " 'The plain error doctrine of W.Va. R.Crim.P. 52(b), whereby the court may take notice of plain errors or defects affecting substantial rights although they were not brought to the attention of the court, is to be used sparingly and only in those circumstances in which a miscarriage of justice would otherwise result.' Syllabus Point 2, *State v. Hatala*, 176 W.Va. 435, 345 S.E.2d 310 (1986)."

This case is factually unlike *Oxier*, where the prosecutor commented at length during closing argument about the defendant's post–*Miranda* silence. The evidence of guilt here is also much stronger than in *Oxier*. The State had eyewitness testimony that the defendant had packaged the Methaqualone (Quaalude) tablets for shipment. A second witness identified the defendant as having delivered the package to a Michigan bus station for shipment to West Virginia. The defendant picked up the package at a Huntington bus station, using the alias of the person to whom the package was addressed.

We also believe the defendant's exculpatory explanation of why he picked up the package using another person's name was hard to believe, if not implausible, even without the improper cross-examination. Consequently, we doubt whether the cross-examination had any effect on the jury or in any way contributed to his conviction. It is also of some significance that the cross-examination of the defendant concerning his post–*Miranda* silence did not relate directly to his alibi defense which was that he was never in Michigan to package or ship the drugs. The prosecutor's cross-examination only concerned why he had not immediately explained to the police his reason for picking up the package using another person's name.

---

ative and the other did not recall. No objection was made to either question.

**2.** Syllabus Point 4 of *Starr* states: "Although it is a well-settled policy that the Supreme Court of Appeals normally will not rule upon unassigned or imperfectly assigned errors, this Court will take cognizance of plain error involving a fundamental right of an accused which is protected by the Constitution."

Courts in other jurisdictions have also refused to reverse convictions under the plain error doctrine where the *Doyle* violation has not resulted in a miscarriage of justice. *E.g., United States v. Cardenas Alvarado*, 806 F.2d 566 (5th Cir.1986); *United States v. Helina*, 549 F.2d 713 (9th Cir.1977); *Beale v. United States*, 465 A.2d 796 (D.C.App.1983), *cert. denied*, 465 U.S. 1030, 104 S.Ct. 1293, 79 L.Ed.2d 694 (1984); *State v. Morgan*, 315 N.C. 626, 340 S.E.2d 84 (1986).

### III.

■The defendant's remaining claim of error is based upon *State v. Kopa*, 173 W.Va. 43, 311 S.E.2d 412 (1983), where this Court followed a decision by the United States Court of Appeals for the Fourth Circuit in *Adkins v. Bordenkircher*, 674 F.2d 279 (4th Cir.), *cert. denied*, 459 U.S. 853, 103 S.Ct. 119, 74 L.Ed.2d 104 (1982), and invalidated an alibi instruction which had been frequently given in this jurisdiction.[3]

■The State concedes the jury in this case was given an unconstitutional burden-shifting alibi instruction.[4] However, the State maintains the defendant waived any error in the giving of the instruction by failing to object. The State relies on our holding in Syllabus Point 2 of *Kopa*, which affords only limited retroactivity:

"The invalidation of the instruction approved in *State v. Alexander*, [161 W.Va. 776], 245 S.E.2d 633 (1978), that places the burden upon the defendant to prove his alibi defense sufficiently to create a reasonable doubt in the mind of the jury as to his guilt is only applicable to those cases currently in litigation or on appeal where the error has been properly preserved at trial."

■The State also maintains that giving the instruction was not plain error and did not impair the truth-finding process of the trial. As the State correctly observes, we discussed the plain error doctrine in *State v. Hutchinson*, 176 W.Va. 172, 342 S.E.2d 138 (1986), with regard to the failure to give a proper alibi instruction. There no objection was made at trial and on appeal the defendant relied upon a claim of ineffective assistance of counsel.[5] In the course of discussing this issue, we considered whether the plain error doctrine would be triggered by the failure to give a proper alibi instruction and concluded that ordinarily it would not. We held in Syllabus Point 2 of *Hutchinson*:

"Although this Court may, under Rule 30 of the West Virginia Rules of Criminal Procedure, notice plain error in the giving of an erroneous instruction (in the absence of a proper and timely objection at trial), this Court will not ordinarily recognize plain error under such circumstances, even of constitutional magnitude, where the giving of the erroneous instruction did not substantially impair the truth-finding function of the trial."[6]

---

**3.** This alibi instruction had been expressly approved in Syllabus Point 2 of *State v. Alexander*, 161 W.Va. 776, 245 S.E.2d 633 (1978).

**4.** *State's Instruction No. 7*, which is identical to the instruction given the jury in *Kopa*, states:
"The Court instructs the jury that where the State of West Virginia has established a prima facie case and the defendant relies upon the defense of alibi, the burden is upon the defendant to prove it, not beyond a reasonable doubt, nor by a preponderance of the evidence, but by such evidence, and to such a degree of certainty, as will, when the whole evidence is considered, create and leave in the mind of the jury a reasonable doubt as to the guilt of the defendant."

**5.** The trial in *Hutchinson* occurred in October, 1983, after the alibi instruction had been declared unconstitutional in *Adkins v. Borden-*

*kircher*, 674 F.2d 279 (4th Cir.), *cert. denied*, 459 U.S. 853, 103 S.Ct. 119, 74 L.Ed.2d 104 (1982). We found counsel was not ineffective in failing to object to the alibi instruction. The trial in this case was conducted in July, 1981, before *Adkins*. This Court concluded in *Hutchinson* that trial counsel's failure to discover and apply the teachings of *Adkins* did not constitute ineffective assistance of counsel. A similar result is even more apparent in this case where the *Adkins* rule was not available at trial.

**6.** No challenge has been made in this case to the limited retroactivity rule as stated in *Kopa*, which was decided before the Supreme Court's decision in *Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S.Ct. 708, 716, 93 L.Ed.2d 649, 661 (1987). In *Griffith*, the Supreme Court held that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases,

Given the substantial nature of the State's case and the weakness of the alibi evidence, we do not believe the giving of the erroneous alibi instruction substantially impaired the truth-finding function of the trial.[7]

For the foregoing reasons, we affirm the judgment of the Circuit Court of Cabell County.

Affirmed.

state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past." Nothing in *Griffith* suggests any limitation of the *Kopa* rule, as the two defendants in *Griffith* had both objected to the prosecution's use of peremptory challenges to exclude prospective black jurors from the jury, and thus had preserved the error for appellate review.

We note that in *Yates v. Aiken*, 484 U.S. 211, 108 S.Ct. 534, 98 L.Ed.2d 546 (1988), the Supreme Court applied its decision in *Francis v. Franklin*, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985), involving a burden-shifting instruction on criminal intent, retroactively to a case pending on certiorari from the denial of state habeas corpus relief. In *Yates*, the Supreme Court did not discuss the necessity of a contemporaneous objection to preserve the error. This state's contemporaneous objection rule enunciated in Syllabus Point 2 of *Hutchinson* was recently recognized as an "adequate independent state ground" for denying habeas

corpus relief with regard to an *Alexander* alibi instruction in *Meadows v. Holland*, 831 F.2d 493 (4th Cir.1987) (en banc) (petition for *cert. filed*, December 15, 1987).

7. We note that the trial court instructed the jury as follows:

"The burden is always upon the prosecution to prove guilt beyond a reasonable doubt. This burden never shifts to the defendant; for the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.

"So, if the jury, after careful and impartial consideration of all the evidence in this case, has a reasonable doubt that the defendant is guilty of the charge, it must acquit. If the jury views the evidence in the case as reasonably permitting either of two conclusions—one of innocence, the other of guilt—the jury should, of course, adopt the conclusion of innocence."