JUSTICE RICE,
dissenting.
¶34 The Court fails to even acknowledge our established canons of statutory construction, our contrary caselaw, and the principles of retroactivity applied by federal and state courts throughout the country in reaching its decision. The Court’s faulty analysis leads to use of a harmless error analysis instead of a plain error analysis which should be used under the plain error statute-particularly in light of *79 the statute’s legislative history, which the Court also ignores. Applying the correct analysis, I would affirm.
¶35 The Court’s analysis confuses two different issues. Under the law, the retroactivity of a new constitutional principle is completely distinct from the questions of whether a defendant has preserved the issue for appeal, whether this Court should take up the issue, and under what standards to do so. These concerns ask whether this Court should address Reichmand’s Goetz issue for the first time on appeal where he failed to raise the argument to the District Court before or during his trial. The law is clear that retroactive application of a new constitutional rule does not relieve a defendant’s obligation to preserve the issue for appeal-even under the plain error statute. This principle was recognized recently by the U.S. District Court for the District of Montana:
Petitioner is not correct that retroactivity extends to cases where, as here, the issue was not properly preserved for appeal. The Montana Supreme Court is not required to recognize and address errors that were not objected to at trial.
Paranteau v. Mahoney, 2010 U.S. Dist. LEXIS 66634 at * 7 (D. Mont. Apr. 8, 2010) (emphasis added).
¶36 The Court’s error begins with its application of §46-20-701(2), MCA. We have explained that this provision is Montana’s “plain error statute” which mirrors the federal plain error doctrine and “codified the common law doctrine of plain error.” State v. Finley, 276 Mont. 126, 132-33, 915 P.2d 208, 212-13 (1996), overruled on other grounds, State v. Gallagher, 2001 MT 39, ¶ 21, 304 Mont. 215, 19 P.3d 817. The Court acknowledges that the plain error statute “greatly restricts appellate review unless objections are made ‘at the time of trial’ or ‘during trial,’ ” Opinion, ¶ 8, but then, without acknowledging our canons of statutory construction and our contrary precedent, simply leaps to the conclusion that the phrases “at the time of trial” and “during trial” actually can mean “five months after trial,” or, apparently, any time after trial.
¶37 It is necessary to once again repeat the law’s instruction to us about statutory interpretation. The Court renders its interpretation without employing the law’s guides-apparently because they are facially contradictory to the Court’s interpretation. ‘In ascertaining legislative intent, we look first to the plain meaning of the words used.” State v. Stanczak, 2010 MT 106, ¶ 17, 356 Mont. 263, 232 P.3d 896 (citing Van Der Hule v. Mukasey, 2009 MT 20, ¶ 10, 349 Mont. 88, 217 P.3d 1019) (emphasis added). ‘During trial”plainly means “during *80 trial”-not five months after trial concludes. Indeed, the Court’s repeated use of quotation marks when stating its holding that Reichmand objected “at trial,”is a wink to the reader that this holding is directly contrary to the statute’s plain meaning.
¶38 It is also directly contrary to our precedent. Consistent with the statutes, our cases clearly hold that post-trial objections do not properly preserve an issue for appeal, but are waived. See § 46-20-104(2), MCA, State v. McWilliams, 2008 MT 59, ¶¶ 43-47, 341 Mont. 517, 178 P.3d 121; State v. Misner, 2007 MT 235, ¶¶ 24-26, 339 Mont. 176, 168 P.3d 679; State v. Grace, 2001 MT 22, ¶ 35, 304 Mont. 144, 18 P.3d 1008.
¶39 This conflict is significant under the plain error statute because, in contrast to other appellate statutes, the plain error statute provides that waived issues may not even be “noticed” on appeal unless the defendant satisfies a threshold burden to show prejudice as to guilt. Compare §46-20-701(2), MCA, with §46-20-104(1), MCA (appeal may be taken from issues which merely “affect the substantial rights of the defendant”). Thus, this “[codification of] the common law doctrine of plain error,” Finley, 276 Mont. at 133, 915 P.2d at 213, embodies the same kind of threshold determination to obtain appellate review as applied under the common law-in addition to establishing retroactivity of a new rule.
¶40 This understanding is also supported by the statute’s legislative history, which informs the issue of what standards of review are to be applied. Section 46-20-701, MCA, was first enacted in 1967, and amended in 1983, to provide several instances in which this Court could undertake plain error review, provided the defendant could still demonstrate heightened prejudice. Finley, 276 Mont. at 133, 915 P.2d at 212-13. When amending the statute in 1983, the Legislature intended to “limit the issues which can be raised by a criminal defendant on appeal,” and “to discourage the abuses and prolonged appeals.” Mont. Sen. Jud. Comm., Minutes of the Hearing on Sen. Bill 2, 48th Legis., Reg. Sess. 2-3 (Jan. 19, 1983). In the House Judiciary Committee, Representative Underdal supported the bill out of frustration for appeals ‘based, not on the question of guilt, but on technicalities.” Mont. H. Jud. Comm., Minutes of the Hearing on Sen. Bill 2,48th Legis., Reg. Sess. 8 (Mar. 16,1983). The Legislature sought to limit plain error review to selected circumstances, including retroactivity, when the defendant had actually suffered prejudice as to his or her guilt or punishment.
*81 ¶41 Consequently, under the plain meaning of the statute, its legislative history, and our cases, traditional plain error standards should be used by the Court in reviewing issues under the plain error statute. However, instead of following these statutory and common law plain error principles, the Court imports the harmless error analysis of State v. Van Kirk, 2001 MT 184, 306 Mont. 215, 32 P.3d 735. In Van Kirk, the defendant had objected in the trial court and preserved the suppression issue, which he then raised on appeal. Van Kirk, ¶ 9. We thus formulated in Van Kirk, ¶¶ 29, 36, a new test for applying the harmless error analysis under § 46-20-701(1), MCA, to address prejudice to the defendant from trial errors objected to at trial-not the plain error analysis under §46-20-701(2), MCA, for errors waived at trial. ‘We therefore deem it appropriate to formally adopt an approach to harmless error issues....” Van Kirk, ¶ 36.
¶42 Harmless error is much different than plain error, involving different purposes, standards, and burdens, and I believe the Court is making a mistake in incorporating Van Kirk harmless error standards into a plain error analysis. Under harmless error, the burden is on the State, which committed the error over defendant’s objection, to demonstrate the lack of prejudice to the defendant because of that error. Van Kirk, ¶ 42 (“[I]t then becomes incumbent on the State to demonstrate that the error at issue was not prejudicial.”). Under plain error, it is the defendant who permitted the error to occur by failing to object, not the State, and the defendant thus bears the burden of demonstrating a need for review which overcomes that error. Further, the harmless error standard of review is a lesser standard than plain error, and is contrary to the plain language of the statute and the clearly expressed intent of the Legislature. Harmless error requires reversal merely when there is a Reasonable possibility” that ‘inadmissible evidence might have contributed to a conviction.” Van Kirk, ¶ 42. Under plain error, as explained in Finley, prejudicial error is that which constitutes “a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial or proceedings, or may compromise the integrity of the judicial process.” Finley, 276 Mont, at 137, 915 P.2d at 215. We should not confuse the two, but rather apply Van Kirk harmless error standards under the harmless error statute, and apply Finley plain error standards under the plain error statute.
¶43 This error is further evidence by the nation’s jurisprudence. Although acknowledging that ‘Trletroactivity jurisprudence in Montana is closely intertwined with federal law,” Opinion, ¶ 13, the *82 Court woefully misunderstands federal law on this point. The United States Supreme Court’s retroactivity jurisprudence clearly supports the principle that a defendant waives a new constitutional rule of criminal procedure by failing to object, even when the new rule had not been announced until after the defendant’s trial. In cases in which the Supreme Court has determined whether a new constitutional rule of criminal procedure is retroactive, the defendant who sought retroactive application of the new rule had objected, thereby preserving the issue for appeal.[1] In Shea v. Louisiana, the Supreme Court began by reiterating that the issue to be decided was “whether [the] ruling [in Edwards v. Arizona] applies retroactively with respect to petitioner’s convictions when the issue was raised and his case was pending and undecided on direct appeal in the state system at the time Edwards was decided.” Shea v. La., 470 U.S. 51, 55, 105 S. Ct. 1065, 1068 (1985) (emphasis added). The Shea Court held that ‘if a case was pending on direct review at the time Edwards was decided, the appellate court must give retroactive effect to Edwards, subject, of course, to established principles of waiver, harmless error, and the like.” Shea, 470 U.S. at 59 n. 4, 105 S. Ct. at 1070 n. 4 (emphasis added).
¶44 The Supreme Court recently reaffirmed these principles in United States v. Booker, explaining that retroactive application of a new constitutional rule of criminal procedure will not necessarily lead to a new trial or sentencing hearing. U.S. v. Booker, 543 U.S. 220, 268, 125 S. Ct. 738, 769 (2005). ‘That is because we expect reviewing courts to apply ordinary prudential doctrines, determining, for example, *83 whether the issue was raised below and whether it fails the ‘plain-error’ test .’’Booker, 543 U.S. at 268, 125 S. Ct. at 769.[2]
¶45 In Johnson v. United States, 520 U.S. 461, 117 S. Ct. 1544 (1997), the Supreme Court undertook the defendant’s retroactivity claim under plain error review standards because the defendant had failed to preserve the issue by objecting. The Supreme Court described its review under the plain error rule as discretionary, not mandatory. Johnson, 520 U.S. at 467, 117 S. Ct. at 1549. Further, the Supreme Court ultimately denied relief to Johnson because, even though the new rule was retroactive, under plain error there was ‘ho basis for concluding that the error ‘seriously affected the fairness, integrity or public reputation of judicial proceedings.’ ” Johnson, 520 U.S. at 470, 117 S. Ct. at 1550.[3]
¶46 These principles are not limited to federal jurisprudence, but are broadly recognized in different states and federal circuits: Membres v. State, 889 N.E.2d 265, (Ind. 2008) (recognizing the objection requirement for new state constitutional rules applied retroactively); Milligrock v. State, 118 P.3d 11, 15 (Alaska App. 2005) (citing Johnson, 520 U.S. at 466-67, 117 S. Ct. at 1548-49; Haag v. State, 117 P.3d 775, 782 (Alaska App. 2005)); Ned v. State, 119 P.3d 438, 443 (Alaska App. 2005) (citing Johnson, 520 U.S. 461, 117 S. Ct. 1544; U.S. v. Cotton, 535 U.S. 625, 122 S. Ct. 1781 (2002)); State v. LaClair, 433 A.2d 1326, 1328-29 (N.H. 1981); State v. Cross, 234 P.3d 288 (Wash. App. Div. 2 2010); State v. Holder, 745 P.2d 141 (Ariz. 1987); People v. Lann, 633 N.E.2d 938 (Ill. App. 1st Dist. 1994); State v. Hutchinson, 342 S.E.2d 138 (W. Va. 1986); Poole v. State, 846 So. 2d 370 (Ala. Crim. App. 2001); U.S. v. Deitz, 577 F.3d 672, 687-88 (6th Cir. 2009) (no plain error in a case in which the defendant failed to preserve the question for appellate review); People v. Woods, 331 N.W.2d 707, 725 (Mich. 1982) (holding Sandstrom v. Mont., 442 U.S. 510, 99 S. Ct. 2450 (1979), *84 would be retroactively applied to pending cases where error was properly raised and preserved); McBee v. Grant, 763 F.2d 811 (6th Cir. 1985); Rodriguez v. U.S., 286 F.3d 972 (7th Cir. 2002) (petitioner sentenced prior to Apprendi waived his Apprendi claim by failing to raise it in district court); U.S. v. Palmer, 297 F.3d 760, 767 (8th Cir. 2002) (THhat Apprendi as a legal precedent did not exist before the prior appeal in the present case ... did not excuse [one of the defendants] from the burden of raising an Apprendi-ITke argument in the first appeal.”); U.S. v. Sanchez-Cruz, 392 F.3d 1196 (10th Cir. 2004), vacated, 544 U.S. 970, 125 S. Ct. 1866 (2005), aff'd in part and reinstated inpart, 143 Fed. Appx. 116 (10th Cir. 2005); U.S. v. Stearns, 387 F.3d 104 (1st Cir. 2004).
¶47 Thus, our statutes and case precedent alike, in order to preserve the integrity of the judicial system, have stated and restated the rule requiring objections and have required appellants to bear the greater burden of demonstrating plain error if they have not properly preserved the issue. Under this long-established principle, whether a defendant has objected is clearly relevant, even for purposes of retroactive application of new rules. If a defendant properly preserves the issue by objecting-and Reichmand could have done so just as easily as Goetz-then he or she is automatically entitled to raise the retroactivity issue on appeal for consideration by the appellate court. If not, then the defendant must satisfy plain error standards.
¶48 Further reasons to apply established plain error standards are the similarities and purposes of the federal and state plain error tests. Our Finley plain error test is nearly identical to the plain error test announced in U.S. v. Atkinson, 297 U.S. 157, 160, 56 S. Ct. 391, 392 (1936), and followed in U.S. v. Olano, 507 U.S. 725, 736, 113 S. Ct. 1770, 1779 (1993), Johnson, 520 U.S. at 467, 117 S. Ct. at 1549, U.S. v. Cotton, 535 U.S. at 631-33, 122 S. Ct. at 1785-86, and a host of other cases. The Atkinson plain error test was eventually codified as Federal Rule of Criminal Procedure 52(b), see Olano, 507 U.S. at 736-37, 113 S. Ct. at 1779, which formed the basis for the plain error doctrine applied in Johnson, 520 U.S. at 465-70, 117 S. Ct. at 1548-50. The federal and state plain error tests serve the same purpose: to review fundamental error, even in the absence of a contemporaneous objection, that otherwise would result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the trial or proceedings, or compromise the integrity of the judicial process. Employing the Van Kirk test not only disregards our plain error test, our plain error statute, and its legislative history, but also the directive *85 of Johnson and the substantial federal guidance on this issue.[4] I suspect that, at some point in the future, fresh eyes will see the folly in failing to apply plain error standards under the plain error statute, and will restore common law review standards to the statute as originally intended. If the Legislature grows impatient for that day, it may want to consider adding language to the statute requiring it to be applied as originally intended.
¶49 Plain Error Application to Reichmand’s Claims
¶50 I do not believe that admission of the electronic recordings between Reichmand and Chor resulted in a manifest miscarriage of justice, unsettled the fundamental fairness of Reichmand’s trial, or compromised the integrity of the judicial process against him. See Finley, 276 Mont. at 137, 915 P.2d at 215. The State’s case at trial rested heavily on the testimony of the confidential informant Terry Chor. The electronic recordings were marginal evidence at best, and merely cumulative of a fraction of Chor’s testimony, while the evidence supporting Reichmand’s guilt was overwhelming and largely uncontroverted.
¶51 The recorded conversations, combined, lasted a total of about five minutes. During the trial, Reichmand was first to inquire about the substance of the recordings when, during the recross-examination of the State’s fourth witness, Agent Martenson, his counsel attempted to demonstrate that Martenson couldn’t identify the individuals speaking on the recording. The State presented the testimony of five witnesses: a forensic scientist, three drug task force agents, and confidential informant Chor. The State played the electronic recordings only during the testimony of its final witness, Agent David Clark, and played a brief portion of one of the audiotapes in rebuttal closing. The recording was of such poor quality that, during rebuttal closing argument, the court reporter could not transcribe the recording because it was ‘hot audible.”
¶52 Reichmand’s defense was mistaken identity-4hat Reichmand’s brother was really the person who had sold the drugs. The State offered the recordings to reiterate Chor’s testimony that he had *86 purchased the drugs from ‘Dallas” Reichmand. However, Chor’s own testimony established this point on numerous occasions. Chor testified that he had been to Dallas’ home to purchase drugs “[florty, 50 times” over the course of “about a year and a half.” During his testimony, Chor identified Dallas on at least four separate occasions, during both direct and cross examination, as the man from whom he bought the drugs. At one point, the following exchange occurred between the prosecutor and Chor:
Q. When you went in the house, who did you meet with?
A. Dallas. Dallas.
Q. And how do you know Dallas again?
A. That’s Dallas.
Q. That’s Dallas[?] Is that the person you purchased the drugs from?
A. Yes, it is.
Q. Do you know the man or the person you purchased those drugs from?
A. Yes. This man right here, Dallas.
¶53 I disagree with the Court’s statement that the electronic recordings provided “objective and qualitatively superior evidence” admitted at trial, Opinion ¶ 25. Three agents with the Southwest Montana Drug Task Force and Montana Department of Justice all testified as to the protocol they followed for the two separate drug transactions with Reichmand. Agent Clark described the officers’ involvement with Chor in gathering evidence against Reichmand:
We usually meet with the informant at a prearranged location, away from everybody. At that time, the informant is searched, his vehicle is searched for any items of contraband or money he might have.... At this point, we sometimes place a phone call to a suspect or we place an electronic transmitting device, or a wire, on the informant, give the informant some money. The informant is then followed to the location of a suspect by agents.
At that time, the informant goes to wherever the suspect is. It could be anywhere. In this instance, it was a house. He goes in the house, makes a transaction, comes back out, drives away. We follow him back to a prearranged meeting location, where, at that time, we take the dangerous drugs from him. And the informant is then searched for any items of contraband or money. His vehicle is also searched. The wire, the electronic transmitting *87 device, is then removed. And we usually have an interview with him, a taped interview, of what occurred during the transaction.
The officers prearranged the meeting with Reichmand by searching Chor and his vehicle and giving Chor traceable money to purchase the drugs. In that way, any money spent or kept, and any illicit drugs removed from Chor after the purchase, were objective evidence of the criminal drug transactions with Reichmand. Further, the agents followed Chor to Reichmand’s house, surveilled the house while Chor was inside for the time necessary to make the drug purchases, followed him back to a prearranged location where they confiscated the drugs and money, and then interviewed him. All of this was objective, credible evidence against Reichmand.
¶54 As we did in State v. Schwartz, 2009 MT 234, 351 Mont. 384, 212 P.3d 1060,1 would affirm Reichmand’s convictions on the basis of the other evidence and conclude that the recordings here did not result in a manifest miscarriage of justice.

 See Linkletter v. Walker, 381 U.S. 618, 621, 85 S. Ct. 1731, 1733 (1965) (defendant moved to suppress evidence seized from his home and business in search incident to arrest), overruled in part, Griffith v. Ky., 479 U.S. 314, 107 S. Ct. 708 (1987); Desist v. U.S., 394 U.S. 244, 244-46, 89 S. Ct. 1030, 1031 (1969) (defendants moved to suppress wire-tapping evidence as a violation of their Fourth Amendment rights); Mackey v. U.S., 401 U.S. 667, 669, 91 S. Ct. 1160, 1162 (1971) (defense counsel objected to the introduction of specific exhibits, “arguing that they were prejudicial, inflammatory, and irrelevant’); U.S. v. Johnson, 457 U.S. 537, 539, 102 S. Ct. 2579, 2581 (1982) (‘Before trial, respondent sought to suppress his oral and written statements as fruits of an unlawful arrest....”), overruled in part, Griffith, 479 U.S. 314, 107 S. Ct. 708; Shea v. La., 470 U.S. 51, 52-53, 105 S. Ct. 1065, 1066 (1985) (defendant both objected and filed a motion to suppress his confession); Allen v. Hardy, 478 U.S. 255, 256, 106 S. Ct. 2878, 2879 (1986) (defense counsel moved to discharge venire panel on constitutional grounds); Griffith v. Ky., 479 U.S. at 317, 107 S. Ct. at 710 (counsel requested an explanation for the prosecution’s striking of four prospective black jurors, and moved for discharge of the panel on Sixth and Fourteenth Amendment constitutional grounds).

 In addition to waiver, the Supreme Court similarly applied principles of procedural default, for failure to preserve an argument, in the retroactivity context in Bousley v. U.S., 523 U.S. 614, 118 S. Ct. 1604 (1998), and Engle v. Isaac, 456 U.S. 107, 102 S. Ct. 1558 (1982).

 The Concurrence cites to Johnson’s statement regarding avoidance of‘“a long and virtually useless laundry list of objections to rulings that were plainly supported by existing precedent.’ ’’Concurrence, ¶ 30, n.l (quoting Johnson, 520 U.S. at 468, 117 S. Ct. at 1549). Ironically, this statement was made by the Johnson Court in support of its application of plain error review, which the Concurrence opposes, to demonstrate that such review is undertaken for errors which are “ ‘plain’ ” at the time of retroactive appellate review, not to excuse the necessity of objecting altogether. Johnson, 520 U.S. at 468, 117 S. Ct. at 1549.

 Applying these principles, I do not believe the Court’s decision today requires that Foster-DeBerry and Foston be overruled. The Foster-DeBerry decision, in particular, recognized the requirement that the defendant must object to preserve error for appeal. The Court there noted that, unlike here, the defendant had not made a plain error argument which could have allowed the Goetz issue to be considered. Foster-DeBerry thus left open the question we answer in this case. Adhering to stare decisis, I would not overrule those decisions. Certain v. Tonn, 2009 Mont. 330, ¶ 19, 353 Mont. 21, 220 P.3d 384; State v. Kirkbride, 2008 MT 178, ¶ 13, 343 Mont. 409, 185 P.3d 340.