329 S.E.2d 53

**STATE of West Virginia**

v.

**Dennett C. HOUDEYSHELL.**

No. 16244.

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 22, 1985.

Decided April 12, 1985.

William E. Kiger, Parkersburg, for appellant.

Andrew Lopez, Asst. Atty. Gen., Charleston, for appellee.

PER CURIAM:

The defendant, Dennett Houdeyshell, was convicted of grand larceny by a jury in the Circuit Court of Ritchie County and was sentenced to an indeterminate term of from one to ten years in the penitentiary. Following denial of his motion for a new trial, he prosecuted this appeal.

The defendant was indicted in Ritchie County for the theft of truck tires, metal chains and metal binders, having a total value of $2,941.00. The equipment was allegedly stolen from trailers the defendant had leased from Truck and Trailer Service Center of Parkersburg, Inc., hereinafter TTS.

At defendant's trial, the state introduced the testimony of Robert Frazier, the owner of TTS. Mr. Frazier testified that in the summer of 1981 he rented three flat-bed trailers to the defendant for $500 per month each. The trailers had chains and binders with them and each trailer had at least eight tires. In October of 1981 Mr. Frazier contacted the defendant regarding rent due on the trailers; when an agreement on the rent was not reached, he and his employees went to Ritchie County to take the trailers back to Parkersburg. They found one of the trailers sitting flat on the ground with all of its tires gone, a second trailer with some of the tires gone, and the third with some of the original tires and some worn flat tires.

Mr. Frazier testified that his employees found several tires belonging to his company in the back of a pickup truck; that they found four TTS tires on an unidentified trailer; and that the defendant agreed to, but never did, return the remainder of the TTS tires that Mr. Frazier and his employees could not locate.

Two former employees of the defendant were also called by the state to testify. Basically their testimony was that tires were sometimes taken from the TTS trailers and placed on other equipment used in the defendant's recycling business; that there were many flat tires in the course of their employment because of the nature of the defendant's business (scraps of metal would fall from the trailers onto the ground where they would pierce tires); and that the defendant at times bought tires to replace the ones that went flat or blew out.

Trooper Phillip Nicholson of the West Virginia Department of Public Safety testified that he saw at least one TTS tire in the back of a pickup truck that belonged to the defendant; that he observed one trailer on the ground without any tires on it; and, that he was present during a telephone conversation between the defendant and Mr. Frazier in which there appeared to be a dispute over the ownership of certain tires.

The evidence presented by the defense showed that the defendant had purchased from Spencer Firestone somewhere between ten and fifty tires in 1981 to replace ones that had blown out or gone flat. Former employees of the defendant testified that they knew that there were a great many blown out tires; that defendant bought tires to replace the bad ones; that it was not unusual to switch tires from one vehicle to another; and that this usually occurred when one piece of equipment was not working and its tires would be removed to be used on another piece of equipment until the first was repaired. One employee testified that he was told by the defendant to replace the tires on the TTS trailer that was found without any, but that he "never got around to doing it."

The defendant testified in his own behalf that his business involved crushing junk cars, loading them onto a trailer and delivering them to a steel mill where they were then recycled into new steel. The defendant denied stealing any tires and testified that he replaced most of the blown out or flat TTS tires with ones he purchased. The defendant further testified that the only TTS chains and binders in his possession

were rented by one of his employees without his knowledge for a one-day period before they were returned. He knew nothing further about any chains and binders belonging to TTS. Finally, the defendant testified that a disagreement arose between himself and Robert Frazier in December of 1981 over the rent on the trailers. The defendant told Mr. Frazier he would return the trailers, but tires he had purchased for them would be removed and old tires (including any TTS tires) would be put back on. The men agreed that the defendant would keep the good tires and pay a full month's rental instead of half a month as he had originally proposed.

■ The defendant contends that the state's evidence was insufficient to sustain a grand larceny conviction.[1] To support a conviction for larceny at common law, it must be shown that the defendant took and carried away the personal property of another against his will and with the intent permanently to deprive him of the ownership thereof. *State v. Louk,* 169 W.Va. 24, 285 S.E.2d 432 (1981). *Also see State v. Neider,* 170 W.Va. 662, 295 S.E.2d 902 (1982); *State v. Pietranton,* 137 W.Va. 477, 72 S.E.2d 617 (1952). In *State v. Louk, supra,* we noted that West Virginia still retains the common law definition of larceny because although *W. Va. Code* 61-3-13 [1977] divides the crime into grand and petit larceny, it does not purport to define the elements of larceny.

The defendant asserts that because he lawfully came into possession of the property which is the subject of his conviction he cannot be guilty of larceny under this definition. In *State v. Robinson,* 106 W.Va. 276, 145 S.E. 383 (1928), the defendant was convicted of the larceny of an automobile of which he had lawful possession but used in a manner unauthorized by the owner. We reversed the conviction, stating:

> And, where property comes into possession of the taker lawfully with the consent of the owner, express or implied, as where the taker is allowed to have possession of the chattel under a contract of hiring, loan, or other bailment, or in the assertion of an honest claim of right, a conversion of the chattel by him while so in possession of it, pursuant to a felonious intent formed subsequent to its acquisition, is not larceny.[2]

106 W.Va. at 279, 145 S.E. at 384.

■ To the contrary, if the bailee has the intent to steal at the very moment he receives possession of the property, then he can be guilty of larceny. *See* Perkins, *Criminal Law* 260 (2d ed. 1969). In the case before us, however, there was no evidence and the state did not attempt to prove that the defendant had the requisite felonious intent to steal the property of TTS when he entered into the rental agreement and obtained possession of it. Indeed, the record indicates the contrary because the defendant paid monthly rentals on the trailers for some time and used them in his salvage business as he had represented he would do. Thus, we reach the conclusion that the defendant is correct in his assertion that the evidence was insufficient to support a common law larceny conviction.

In *State v. Louk, supra,* we recognized that, in addition to common law larceny, we have certain statutes dealing with specialized forms of theft.[3] Certain offenses that were not crimes at common law have been designated as larceny under these various statutes. In *State v. Moyer,* 58 W.Va. 146, 52 S.E. 30 (1905) we stated that embezzlement, which is designated in *W. Va. Code*

---

1. The defendant also assigns as error: (1) the court's failure to direct a verdict when there was a variance between the evidence and the allegation of ownership in the indictment, and (2) the court's permitting the state to call rebuttal witnesses. These assignments of error need not be addressed because we reverse on other grounds.

2. The reasoning behind this law is that there is no taking and carrying away, one of the essen-

tial elements of common law larceny, if the property is lawfully obtained. In *State v. Chambers,* 22 W.Va. 779, 789 (1883), we noted that to take an article signifies "to lay hold of, seize or grasp ..."

3. *See* n. 2 of *State v. Louk,* 169 W.Va. 24, 285 S.E.2d 432 (1981).

61-3-20 [1929] as a form of larceny, is purely a statutory offense. Quoting from *State v. Moyer, supra,* we said in *State v. Frasher,* 164 W.Va. 572, 265 S.E.2d 43 (1980):

It [embezzlement] was unknown to the common law, and the statute was enacted for the purpose of supplying what were regarded as defects in the common law of larceny, so as to reach and punish for the fraudulent conversion of money or property which could not be reached by the common law.... The distinction between embezzlement and larceny is that embezzlement is the wrongful conversion of property without trespass, or where the original taking and possession is lawful. In order to constitute the offense, it is necessary that the property embezzled should come lawfully into the hands of the party embezzling, and by virtue of the position of trust he occupies to the person whose property he takes.

164 W.Va. at 576, 265 S.E.2d at 46. *Also see, State v. Riley,* 151 W.Va. 364, 151 S.E.2d 308 (1966).

█ It is well established law that one under indictment for common law larceny may be convicted of that offense by evidence showing that he embezzled the property alleged to have been stolen. *State v. West,* 157 W.Va. 209, 200 S.E.2d 859 (1973); *State v. Workman,* 91 W.Va. 771, 114 S.E. 276 (1922); *State v. DeBerry,* 75 W.Va. 632, 84 S.E. 508 (1915); *State v. Lewis,* 69 W.Va. 472, 72 S.E. 475 (1911).

The defendant's contention, therefore, that he could not have been convicted of larceny because he came into possession of the property lawfully must fail. If the elements of the crime were proved he could have been convicted of a statutory form of larceny even though he was indicted for the common law offense.[4]

The question now arises whether the state did in fact prove the defendant guilty of embezzlement, which appears to be what

it attempted to do. If it did, then the grand larceny conviction can stand. We set out the necessary elements to prove embezzlement in *State v. Frasher,* 164 W.Va. at 576, 265 S.E.2d at 46, quoting from *State v. Moyer, supra:*

"[I]n order to constitute the crime of embezzlement, it is necessary to show, (1) the trust relation of the person charged, and that he falls within that class of persons named; (2) that the property or thing claimed to have been embezzled or converted is such property as is embraced in the statute; (3) that is the property of another person; (4) that it came into the possession, or was placed in the care, of the accused, under and by virtue of his office, place or employment; (5) that his manner of dealing with or disposing of the property, constituted a fraudulent conversion and an appropriation of the same to his own use, and (6) that the conversion of the property to his own use was with the intent to deprive the owner thereof."

█ Although a common law larceny indictment will support an embezzlement conviction, if the state proves the elements of embezzlement, it is a basic tenet of law that the jury must be instructed on those elements before a conviction can be sustained by proof of them. A jury cannot convict one of a crime whose elements are unknown to the jury. The record in the case before us indicates that the jury was instructed on only common law grand larceny.[5] Therefore, the defendant could not be convicted of grand larceny by embezzlement.

█ Syllabus Point 1 of *State v. Starkey,* 161 W.Va. 517, 244 S.E.2d 219 (1978) states:

In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the

4. In *State v. Lewis,* 69 W.Va. 472, 72 S.E. 475 (1911), we stated: "... [O]n a trial of an indictment alleging simple larceny, conviction may be had, not only for simple larceny, but for receiving or concealing stolen goods, obtaining under false pretense, or embezzlement."

5. The court's charge to the jury stated in part:

Grand larceny is committed when any person takes and carries away personal property of the value of two hundred dollars or more of another person against his will and without his consent with the intention at the time to permanently deprive the owner of his property.

state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done.

In this case the state's failure to prove an essential element of the offense of grand larceny is a manifest inadequacy in the evidence. Therefore, the defendant's motion for acquittal should have been granted.

Accordingly, the judgment of the Circuit Court of Ritchie County is reversed and the defendant is unconditionally discharged from custody.

Reversed.