376 S.E.2d 548

**STATE of West Virginia**

v.

**Bryson J. ENGLAND, Jr.**

**No. 18009.**

Supreme Court of Appeals of
West Virginia.

Sept. 16, 1988.

Charles G. Brown, III, Atty. Gen., Silas B. Taylor, Dist. Atty. Gen., Charleston, for the State.

MILLER, Justice:

The defendant, Bryson J. England, Jr., was convicted of aggravated robbery by a Fayette County Circuit Court jury in March, 1984, and was sentenced to life imprisonment. On appeal, he cites as error: (1) a constitutionally deficient robbery instruction; (2) improper rebuttal testimony and summation by the State; (3) ineffective assistance of counsel; and (4) a sentence disproportionate to the crime committed. We find no prejudicial error, and affirm the conviction.

## I.

This case arose out of a robbery at an Exxon service station on U.S. Route 19 south of Oak Hill. At 10:00 p.m. on November 28, 1983, the station attendant, Tracy Miller, observed a pick-up truck pass by the station and turn into a lane some yards away. A man soon appeared from the rear of the station with a dark ski mask over his face. He approached Mr. Miller and demanded the station's "money bag." When Mr. Miller said the money had already been picked up, the man drew a pistol from his pocket. He fired one shot toward the highway and announced that he was not "playing around."

Mr. Miller retrieved the money bag, which contained approximately $230 in cash, from a booth inside the station. The man asked if there was any more money, and punctuated his query with a second shot into the booth. When Mr. Miller gave assurances that there was no more money, the man instructed him to remain at the station, fired a third shot into the telephone, and ran from the station on foot.

The defendant was implicated in a statement obtained from Teresa Parish two days after the robbery. Ms. Parish lived with the defendant's brother, Robert, at a trailer in the Oak Hill area. Ms. Parish informed the police that on the night of the robbery the defendant was at the trailer with Robert and two other men, Jeff Adkins and David Watters. The foursome departed in Robert's pick-up truck between 9:00 p.m. and 12:00 a.m. On their return, Robert told Ms. Parish that he and each of the others had gotten $50, and that they "might start doing A.R.'s." [1] Messrs. Adkins and Watters entered guilty pleas prior to the defendant's trial.[2] They and Ms. Parish were offered as witnesses for the State.

The defendant relied on an alibi defense, in support of which he and Robert took the stand. His theory of the case, as consistently presented, was that Messrs. Adkins and Watters committed the robbery and attempted to implicate him to obtain a more favorable plea. The jury returned a guilty verdict on March 1, 1984, and the defendant was sentenced to life imprisonment by order dated July 12, 1984.

## II.

We address first the defendant's contention that the jury instruction which defined the elements of aggravated robbery was deficient because it failed to set out all of the elements of the crime of robbery. W.Va. Code, 61–2–12, prohibits, *inter alia*, "robbery by partial strangulation or suffocation, or by striking or beating, or by other violence to the person, or by the threat or presenting of firearms, or other deadly weapon or instrumentality whatsoever[.]" State's Instruction No. 2 was drawn directly from the statute, and read as follows:

"The court instructs you that aggravated robbery is when a person commits robbery by partial strangulation or suffocation, or by striking or beating, or by other violence to the person, or by the threat or presenting of a firearms [sic] or other deadly weapon or instrumentality whatsoever."

1. The term "A.R.'s" was explained to be armed robberies.

2. Messrs. Adkins and Watters pled guilty to breaking and entering, and were sentenced to indeterminate terms of one-to-ten years.

■ We stressed in *State v. Harless*, 168 W.Va. 707, 285 S.E.2d 461 (1981), that W.Va. Code, 61–2–12, does not define "robbery." Rather, the statute merely differentiates between two classes of robbery and prescribes the penalty for each class. These classes are (1) "aggravated" robbery, or robbery by violence or threat, and (2) "nonaggravated" robbery, or robbery by any other means. The elements of robbery, unaffected by the statute, are derived from the common law as we summarized in Syllabus Point 1 of *Harless:*

> "At common law, the definition of robbery was (1) the unlawful taking and carrying away, (2) of money or goods, (3) from the person of another or in his presence, (4) by force or putting him in fear, (5) with intent to steal the money or goods."

The intent to steal, an element of robbery, meant the intent to feloniously deprive the owner permanently of his property, as we stated in Syllabus Point 2 of *State v. Hudson*, 157 W.Va. 939, 206 S.E.2d 415 (1974):

> "Animus furandi, or the intent to steal or to feloniously deprive the owner permanently of his property, is an essential element in the crime of robbery."

■ Neither the unlawful taking of goods or money from the person nor the intent to permanently deprive the owner of the property was included in State's Instruction No. 3. Consequently, the instruction violates the Syllabus of *State v. Jeffers*, 162 W.Va. 532, 251 S.E.2d 227 (1979):

> "Where a trial court gives, over objection, an instruction which incompletely states the law, and the defect is not corrected by a later instruction, the giv-

ing of such incomplete instruction constitutes reversible error where the omission involves an element of the crime." [3]

*See also State v. Houdeyshell*, 174 W.Va. 688, 329 S.E.2d 53 (1985).

The State points out that the defendant did not timely object to the faulty robbery instruction. We must, therefore, determine whether the error may be reviewed as "plain error" under Rule 30 of the Rules of Criminal Procedure.[4] We discussed the application of our plain error rule to infirm jury instructions in Syllabus Point 2 of *State v. Hutchinson*, 176 W.Va. 172, 342 S.E.2d 138 (1986):

> "Although this Court may, under Rule 30 of the West Virginia Rules of Criminal Procedure, notice plain error in the giving of an erroneous instruction (in the absence of a proper and timely objection at trial), this Court will not ordinarily recognize plain error under such circumstances, even of constitutional magnitude, where the giving of the erroneous instruction did not substantially impair the truth-finding function of the trial."

We have also recognized "plain error" under the provisions of Rule 52(b) of the Rules of Criminal Procedure[5] in Syllabus Point 2 of *State v. Hatala*, 176 W.Va. 435, 345 S.E.2d 310 (1986):

> "The plain error doctrine of W.Va. R.Crim.P. 52(b), whereby the court may take notice of plain errors or defects affecting substantial rights although they were not brought to the attention of the court, is to be used sparingly and only in those circumstances in which a miscarriage of justice would otherwise result." [6]

---

**3.** It is not disputed that this was the only robbery instruction given.

**4.** As relevant here, Rule 30 of the Rules of Criminal Procedure provides:

> "No party may assign as error the giving or the refusal to give an instruction or to the giving of any portion of the charge unless he objects thereto before the arguments to the jury are begun, stating distinctly the matter to which he objects and the grounds of his objection; but the court or any appellate court may, in the interest of justice, notice plain error in the giving or refusal to give an in-

struction, whether or not it has been made the subject of objection."

**5.** Rule 52(b) provides: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." This language is identical to Rule 52(b) of the Federal Rules of Criminal Procedure.

**6.** *Hatala's* Syllabus was substantially derived from *United States v. Young*, 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1, 12 (1985), where the Supreme Court stated:

**348**

*See also* Syllabus Point 4, *State v. Grubbs,* 178 W.Va. 811, 364 S.E.2d 824 (1987).

 It should not be thought that the plain error rule under Rule 30 differs in any respect from the plain error rule set out in Rule 52(b). In the federal rules, there is no language in Rule 30 relating to the doctrine of plain error. However, as stated in 3A Wright, Federal Practice and Procedure § 856, the plain error doctrine is available for instructional error:

> "Rule 52(b) must be read in harmony with Rule 30, which provides that no party may assign as error an instruction to which he has not objected before the jury retires. Despite the language of Rule 30, a court may notice an erroneous instruction as plain error, but that power will not be used to destroy the requirement of Rule 30 that timely objection must ordinarily be made." [7] (Footnotes omitted.)

Our insertion of plain error language in our Rule 30 merely makes manifest what occurs under the federal rule. In order to avoid any future confusion, it is appropriate to blend the best parts of the dual syllabus points from *Hutchinson* and *Hatala.* We did this in *State v. Starkey,* 161 W.Va. 517, 244 S.E.2d 219 (1978), which involved our rule for testing the sufficiency of the evidence in a criminal case. In setting this integrated rule, we wish to emphasize that it does not change our prior law with regard to the plain error doctrine.

The plain error doctrine contained in Rule 30 and Rule 52(b) of the West Virginia Rules of Criminal Procedure is identical: It enables this Court to take notice of error, including instructional error occurring during the proceedings, even though such error was not brought to the attention of the trial court. However, the doctrine is to be used sparingly and only in those circumstances where substantial rights are affected, or the truth-finding process is substantially impaired, or a miscarriage of justice would otherwise result.

 Another facet of the plain error doctrine is that while it permits a court to review the error, it does not necessarily mean that the plain error standard will be met. Typically, courts will discuss the unobjected to error, and review the entire record to determine if it met the plain error standard. If the court finds it did not, no reversal will occur. This is precisely what occurred in *United States v. Young,* 470 U.S. 1, 16, 105 S.Ct. 1038, 1047, 84 L.Ed.2d 1, 13, (1985):

> "When reviewed with these principles in mind, the prosecutor's remarks cannot be said to rise to the level of plain error. Viewed in context, the prosecutor's statements, although inappropriate and amounting to error, were not such as to undermine the fundamental fairness of the trial and contribute to a miscarriage of justice."

We have utilized this same approach in our plain error cases. *E.g., State v. Grubbs, supra; State v. Hatala, supra; State v. Hutchinson, supra.*

One of our traditional inquiries in cases involving instructional error is whether the defect in the instruction is cured by other valid instructions. *E.g., State v. Pannell,* 175 W.Va. 35, 330 S.E.2d 844 (1985); *State v. Vance,* 168 W.Va. 666, 285 S.E.2d 437 (1981). This avenue is unavailable to us as there was no other instruction given defining robbery.

"The plain-error doctrine of Federal Rule of Criminal Procedure 52(b) tempers the blow of a rigid application of the contemporaneous-objection requirement. The Rule authorizes the Courts of Appeals to correct only 'particularly egregious errors,' *United States v. Frady,* 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982), those errors that 'seriously affect the fairness, integrity or public reputation of judicial proceedings,' *United States v. Atkinson,* 297 U.S. [157] at 160, 56 S.Ct. [391] at 392, 80 L.Ed. 555. In other words, the plain error exception to the contemporane-ous-objection rule is to be 'used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.' *United States v. Frady, supra,* 456 U.S., at 163, n. 14, 102 S.Ct., at 1592, n. 14, 71 L.Ed.2d 816." (Footnote omitted.)

7. *See, e.g., United States v. Chaney,* 559 F.2d 1094 (7th Cir.1977); *United States v. Sisto,* 534 F.2d 616 (5th Cir.1976); *United States v. Huffman,* 467 F.2d 189 (6th Cir.1972); *United States v. Bagby,* 451 F.2d 920 (9th Cir.1971).

There is law holding that a defective instruction may be deemed harmless where the State's evidence is substantial and defendant admits the occurrence of the crime, but relies on a defense of alibi, insanity, or self-defense. In this situation, an instruction which improperly defines the elements of the crime is held not to have misled the jury. This situation occurred in *Connecticut v. Johnson,* 460 U.S. 73, 103 S.Ct. 969, 74 L.Ed.2d 823 (1983), where the trial court had given an improper burden shifting instruction on criminal intent. The Supreme Court, in finding the error harmless,[8] stated:

> "In presenting a defense such as alibi, insanity, or self-defense, a defendant may in some cases admit that the act alleged by the prosecution was intentional, thereby sufficiently reducing the likelihood that the jury applied the erroneous instruction as to permit the appellate court to consider the error harmless." 460 U.S. at 87, 103 S.Ct. at 977, 74 L.Ed.2d at 834.[9]

Similar results have been reached by other courts confronted with defective instructions where the defendant has conceded the criminal occurrence, but defended on alibi. *E.g., Krzeminski v. Perini,* 614 F.2d 121 (6th Cir.), *cert. denied* 449 U.S. 866, 101 S.Ct. 199, 66 L.Ed.2d 84 (1980); *Washington v. Harris,* 650 F.2d 447 (2d Cir.1981), *cert. denied* 455 U.S. 951, 102 S.Ct. 1455, 71 L.Ed.2d 666 (1982); *State v. Black,* 54 Ohio St.2d 304, 376 N.E.2d 948 (1978); *State v. Bridgeman,* 51 Ohio App.2d 105, 366 N.E.2d 1378 (1977); *State v. Holmes,* 613 S.W.2d 664 (Mo.App.1981).

▉ This line of cases is particularly applicable here. The central issue presented was the identity of the robber. That the robber seized the money bag unlawfully and possessed the intent to steal were facts undisputed by the defendant. The defense theory of the case actually *presupposed* that a robbery took place. The defense counsel admitted in opening statement and in summation that a robbery had occurred,[10] and proceeded to identify Messrs. Adkins and Watters as the perpetrators. He testified that they implicated him solely to obtain a more favorable plea bargain. His contention, therefore, was not that there was no robbery, but that he had not been a participant. We thus conclude that the erroneous instruction did not impact on the jury's truth-finding function, and did not rise to the level of plain error.

We, therefore, conclude that where an instruction is given which improperly defines the crime of aggravated robbery, but there is substantial evidence introduced proving such robbery, and the defendant admits a robbery occurred and relies solely on an alibi defense, such instructional error when not objected to at trial will not be subject to the plain error doctrine.[11]

---

**8.** In *Johnson,* the error was of a constitutional nature, and had to be deemed harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

**9.** While the quote is contained in the plurality opinion, the view it expresses commanded the votes of a majority. The dissenters in *Johnson* favored application of harmless error to all cases of "*Sandstrom* error," rather than to the narrow class of cases alluded to by the plurality. The view of the dissenters prevailed only three years after *Johnson* was decided. *Rose v. Clark,* 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986).

**10.** This is a portion of the opening statement of defense counsel:

> "We certainly don't have in mind to show you a robbery didn't take place. It very well may have. What we contend happened that we're going to show you happened was that the State started investigating, these 2 gentle-

men cooked up the idea that, by golly, we'll pin it on Bryson England and we won't have to tell on ourselves so much and what we can do is get out of this the cheapest way possible.... They were the ones that pulled this holdup, that they did it and that (they) attempted to draw some other people into it in order to shift the guilt from themselves."

The defense attorney's closing statements contained these remarks:

> "Now I'm not going to try to stand up here and convince you that based on all of this evidence that there wasn't a stickup at that Exxon station. It sure sounds like there was.
>
> \* \* \* \* \* \*
>
> "It has been clearly proved that an armed robbery was committed at that Exxon station. It's been even confessed that the State's two star witnesses were involved in it."

**11.** The defendant would also have us utilize the plain error rule to review the admission of

### III.

The defendant also complains that the prosecutor, in his summation, misstated the evidence and improperly vouched for the credibility of State witnesses.

As we have already mentioned, much of the focus in this case was on the issue of identity. One important point of dispute involved the footwear worn by the robber. Mr. Miller stated in direct testimony that the robber wore "some dingy colored tennis shoes." Other witnesses for both parties reported that, on the day of the robbery, the defendant wore black Army boots.

The prosecutor, in summation, attempted to minimize the apparent conflict in the evidence in two ways. First, he informed the jury that Mr. Miller had testified that he was "terrified" during the robbery. Second, he offered a possible explanation for the discrepancy, viz., that the defendant's Army boots were muddy and could have been mistaken for tennis shoes in the station's fluorescent lights. The defendant protests that Mr. Miller did not state that he was fearful, and that the State's attempted explanation of the conflicting testimony was improper.

■ Our cases demonstrate that an attorney who represents the State in a criminal proceeding is not a mere partisan. To the contrary, he assumes a quasi-judicial role and is required to set a tone of fairness and impartiality, as we said in Syllabus Point 3 of *State v. Boyd,* 160 W.Va. 234, 233 S.E.2d 710 (1977):

"The prosecuting attorney occupies a quasi-judicial position in the trial of a criminal case. In keeping with this position, he is required to avoid the role of a partisan, eager to convict, and must deal fairly with the accused as well as the other participants in the trial. It is the prosecutor's duty to set a tone of fairness and impartiality, and while he may and should vigorously pursue the State's case, in so doing he must not abandon the quasi-judicial role with which he is cloaked under the law."

■ It is improper for a prosecutor intentionally to misstate record evidence or to interject his opinion as to what the evidence is. He is permitted, however, to draw reasonable inferences from evidence properly admitted in the case. *See People v. Walls,* 87 Ill.App.3d 256, 42 Ill.Dec. 347, 408 N.E.2d 1056 (1980); *State v. Phillips,* 226 N.W.2d 16 (Iowa 1975); *Commonwealth v. Gilman,* 470 Pa. 179, 368 A.2d 253 (1977).

This principle was summarized in Section 3–5.8(a) of the A.B.A. Standards of Criminal Justice as follows: "The prosecutor may argue all reasonable inferences from the evidence in the record. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw." *Cf.* D.R. 7–106(C)(1) (forbids reference to matters not supported by admissible evidence). We recognized this point in *State v. Kennedy,* 162 W.Va. 244, 249, 249 S.E.2d 188, 190 (1978), where we admonished that a prosecutor's argument to the jury "must keep

rebuttal testimony to impeach the defendant's principal alibi witness. The State, in its cross-examination of Robert England, attempted to determine why Ms. Parish moved out of Robert's trailer after the robbery. The prosecutor inquired: "Did you ever strike her? Did that have anything to do with her leaving?" The witness denied any violence. Ms. Parish was recalled by the State as a rebuttal witness. She stated that she had been struck by Robert on prior occasions, and that the violence had prompted her to leave the trailer. There was no defense objection to either line of inquiry by the State.

Rule 608 of the West Virginia Rules of Evidence limits impeachment of a witness to mat-

ters probative of "truthfulness or untruthfulness," and prohibits extrinsic evidence to show "[s]pecific instances of the conduct of a witness for the purpose of attacking or supporting his credibility[.]" It is doubtful that Ms. Parish's testimony would satisfy these requirements.

We decline to apply the plain error rule. Even assuming that the rebuttal testimony by Ms. Parish was improper, the defendant extensively dwelt on the subject of domestic violence in his cross-examination of Ms. Parish. This was not to undermine her credibility, but to buttress the defense theory that she feared and hated the defendant's brother, Robert, which motivated her to lie. *See* Syllabus Point 3, *State v. Smith,* 178 W.Va. 104, 358 S.E.2d 188 (1987).

# untitled

within the evidence." And in *State v. Critzer*, 167 W.Va. 655, 280 S.E.2d 288 (1981), we reversed a conviction on the sole basis of the prosecutor's numerous improper remarks in his closing argument.

■■■ We do not find that the prosecutor violated these principles in the instant case. While Mr. Miller did not testify that he was fearful, other witnesses noted Mr. Miller's shock and confusion immediately after the robbery. That Mr. Miller was fearful at the time of the robbery, and that his powers of observation momentarily lapsed, were bona fide factual inferences. There is also no error in the attempted explanation of Mr. Miller's testimony as to the tennis shoes. The prosecutor simply drew an inference from facts already properly before the jury.[12]

The defendant also contends the prosecutor made improper expressions of opinion as to the veracity of State witnesses. This issue is controlled by Syllabus Point 3 of *State v. Critzer, supra,* where we said:

"It is improper for a prosecutor in this State to 'assert his personal opinion as to the justness of a cause, as to the credibility of a witness ... or as to the guilt or innocence of the accused....' ABA Code DR 7–106(C)(4) *in part.*"

■■■ *Critzer* does not prohibit comment by the prosecutor on the credibility of witnesses, but only the assertion of a personal opinion. It has been stated that the purpose of the *Critzer* rule is to prevent the use of the prosecutor's *status* as a means to bolster witness credibility.

"Credibility is to be determined solely by the triers, but an advocate may point to the fact that circumstances or independent witnesses give support to one witness or cast doubt on another. The prohibition pertains to the advocate's personally endorsing, vouching for, or giving an opinion. The cause should turn on the evidence, not on the standing of the advocate, and the testimony of witnesses must stand on its own." Commentary, § 3–5.8, A.B.A. Standards for Criminal Justice 1986.

■■■ Our review of the remarks by the prosecutor leads us to conclude that *Critzer* was not violated. The jury was informed that Messrs. Adkins and Watters "were here to tell the truth," and that neither had "something to gain" by testifying against the defendant. The prosecutor concluded: "They [the State witnesses] took an oath to tell you the truth, and I submit to you that that's what they did." This latter statement, with its use of the pronoun "I" and oblique reference to the prosecutor's earlier comment that the witnesses "were here to tell the truth," may have skirted the border, but we do not deem it to be error.[13]

### IV.

■■■ We next consider the defendant's claim of ineffective assistance of counsel. It is asserted that defense counsel was deficient in numerous respects, the cumulative effect of which was to deprive the defendant of the level of legal assistance guaranteed by the Sixth Amendment to the United States Constitution, and Article III, Section 14 of the West Virginia Constitution. We discussed the applicable

---

12. The defendant also objects to the State's representation that the truck seen by Mr. Miller immediately before the robbery was proved to be that of Robert England. While Mr. Miller did not identify the England truck, the testimony of other witnesses placed the truck in the vicinity of the robbery. Further, the use of the England truck was entirely consistent with the defense theory that the robbery was committed by Messrs. Adkins and Watters since they stated they used the truck.

13. Most cases reversed due to prosecutorial comment on credibility involve either categorical assertions that a witness is lying or intimations of the prosecutor's personal belief or dis-

belief of particular witnesses. *E.g., Powell v. United States,* 455 A.2d 405 (D.C.App.1982) (defendant's story was "concocted" and "ridiculous"); *Wilson v. People,* 743 P.2d 415 (Colo. 1987) (repeated references to defense witnesses as "liars"); *State v. Bujnowski,* 130 N.H. 1, 532 A.2d 1385 (1987) (extensive use of first person, i.e., "I believe" and "I think."); *State v. Marsh,* 728 P.2d 1301 (Haw.1986) (testimony of defendant and alibi witnesses referred to as "lies"); *State v. Ayers,* 148 Vt. 421, 535 A.2d 330 (1987) (extensive use of first person, i.e., "I believe" and "I think."); *Browder v. State,* 639 P.2d 889 (Wyo.1982) (same).

law in Syllabus Points 19 and 21 of *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974):

"19. In the determination of a claim that an accused was prejudiced by ineffective assistance of counsel violative of Article III, Section 14 of the West Virginia Constitution, and the Sixth Amendment to the United States Constitution, courts should measure and compare the questioned counsel's performance by whether he exhibited the normal and customary degree of skill possessed by attorneys who are reasonably knowledgeable of criminal law, except that proved counsel error which does not affect the outcome of the case, will be regarded as harmless error.

\* \* \* \* \* \*

"21. Where a counsel's performance, attacked as ineffective, arises from occurrences involving strategy, tactics and arguable courses of action, his conduct will be deemed effectively assistive of his client's interests, unless no reasonably qualified defense attorney would have so acted in the defense of an accused."

The most noteworthy averments of ineffectiveness are: failure to object to the deficient robbery instruction and an unconstitutional alibi instruction; failure to object to improper rebuttal testimony and summation by the State; misstatements to the jury as to the applicable burden of proof; failure to offer an instruction to inform the jury that accomplice testimony is "inherently suspect"; and failure to timely move for a judgment of acquittal.

■ We may briefly address the merits of the alibi instruction argument arising from State's Instruction No. 4.[14] While that instruction does contain some language that is similar to the *Alexander* instruction [15] condemned in *Adkins v. Bordenkircher*, 674 F.2d 279 (4th Cir.), *cert. denied*, 459 U.S. 853, 103 S.Ct. 119, 74 L.Ed.2d 104 (1982), and *State v. Kopa*, 173 W.Va. 43, 311 S.E.2d 412 (1983), we believe it does have a significant difference. The last sentence of the instruction clearly and unmistakably places the burden on the State to prove "beyond a reasonable doubt the actual presence of the accused at the time and place of commission of the alleged crime."

The vice of the *Alexander* instruction, as *Adkins* explained, was that it placed on the defendant the burden to prove the alibi defense. This, in effect, relieved the state of its obligation to prove the defendant's presence at the scene of the crime beyond a reasonable doubt. According to *Adkins*, "the Supreme Court has long admonished that the prosecution must prove every element of a criminal charge beyond a reasonable doubt. *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *In Re: Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)." 674 F.2d at 282.[16]

We have not found in any case an instruction that is similar to State's Instruc-

---

**14.** State Instruction No. 4 provided:

"The court instructs the jury, that where the defendant relies upon the defense of alibi, the burden is upon him to prove it, not beyond a reasonable doubt, nor by a preponderance of the evidence, but by such evidence and to such degree of certainty as will, when the whole evidence is considered, create and leave in the mind of the jury a reasonable doubt as to the guilt of the accused. The State is not relieved of the burden of proving beyond a reasonable doubt the actual presence of the accused at the time and place of commission of the alleged crime."

**15.** The *Alexander* instruction takes its name from the case in which it was first discussed, *State v. Alexander*, 161 W.Va. 776, 780–81, 245 S.E.2d 633, 637 (1978), and is as follows:

"The Court instructs the jury that where the state has established a prima facie case and the defendants rely upon the defense of alibi, the burden is upon them to prove it, not beyond a reasonable doubt, nor by a preponderance of the evidence, but by such evidence, and to such a degree of certainty, as will, when the whole evidence is considered, create and leave in the mind of the jury a reasonable doubt as to the guilt of the accused."

**16.** We have dealt with *Alexander* instructions since *Kopa* in the following cases: *State v. Fisher*, 179 W.Va. 516, 370 S.E.2d 480 (1988); *State v. Grubbs*, 178 W.Va. 811, 364 S.E.2d 824 (1987); *Morrison v. Holland*, 177 W.Va. 297, 352 S.E.2d 46 (1986); *State v. Hutchinson*, 176 W.Va. 172, 342 S.E.2d 138 (1986); *State v. Collins*, 174 W.Va. 767, 329 S.E.2d 839 (1984).

tion No. 4.[17] After *Adkins,* the Fourth Circuit Court of Appeals in *Frye v. Procunier,* 746 F.2d 1011, 1012 (4th Cir.1984), *cert. denied,* 472 U.S. 1010, 105 S.Ct. 2707, 86 L.Ed.2d 723 (1985), found this instruction to be valid in the face of an *Adkins* challenge:

> "The court instructs the jury that the defendant need not prove his alibi beyond a reasonable doubt or even by a preponderance of the evidence. The defendant must only introduce evidence which, when considered with the whole evidence, creates a reasonable doubt regarding his guilt. If, after considering all the evidence, you have a reasonable doubt that the defendant was present at the time and place the alleged offenses were committed, you shall find him not guilty of all offenses." 746 F.2d at 1012.[18]

The clear command of the last sentence in State's Instruction No. 4 is that the State is not relieved of its burden of proving the presence of the defendant beyond a reasonable doubt. We conclude that for this reason it does not violate the *Adkins–Kopa* rule. Because we find State's Instruction No. 4 to be valid, the claim that trial counsel was ineffective for failing to object to it is without merit.

The State notes that the remainder of the defendant's ineffective assistance of counsel claims [19] are not apparent on the face of the record and were not sufficiently developed below. We are asked to decline to reach the ineffectiveness claim on these grounds, and to permit the development of a fuller record in habeas corpus.

We have in prior cases expressed concern that claims of ineffective assistance of counsel may be inadequately developed on appeal and, therefore, inappropriate subjects for direct review. For example, in *State v. Glover,* 177 W.Va. 650, 355 S.E.2d 631 (1987), a claim of ineffective assistance was founded on the failure to provide a timely notice of alibi. We noted that in appropriate circumstances the failure to adequately investigate an alibi defense, and to subpoena and call witnesses in support of that defense, would constitute ineffective assistance. We declined to hold that the unexplained failure to give a notice of alibi would, of itself, prove deficient assistance. Since the record did not disclose the reason for the failure, *Glover* was remanded for further development.

This concern over an inadequate record to support an ineffective assistance of counsel claim was repeated in *State v. Chamberlain,* 178 W.Va. 420, 359 S.E.2d 858 (1987). There, we affirmed the conviction and left to the defendant the option to pursue his ineffective assistance of counsel claim by way of a habeas corpus. *Chamberlain* claimed that counsel was deficient in his failure to interview potential alibi

---

**17.** In *State v. Grubbs,* 178 W.Va. 811, 815, 364 S.E.2d 824, 828 n. 10 (1987), we found this instruction to be valid:

> "As the State bears the burden of proving each and every element of the crimes charged, including the presence of the Defendant, beyond a reasonable doubt, the Defendant is not required to sustain the defense of alibi by any particular degree of proof. It is sufficient if such evidence of alibi, when considered along with all of the evidence in this case, creates in the mind of each juror a reasonable doubt as to his guilt."

This instruction is obviously to be preferred over the one utilized in this case.

**18.** In *Frye,* the court said the questioned instruction was not as bad as one earlier approved by the Fifth Circuit in *Poole v. Georgia,* 551 F.2d 683, 685 (5th Cir.1977), which stated:

> "Alibi is a defense involving the impossibility of the defendant's presence at the scene of the alleged offense at the time of the alleged commission of the offense, and the range of evidence or showing in respect to time and place must be sufficiently strong to exclude the possibility of his presence at the scene of the alleged offense at the time of the commission thereof, if any.
>
> "Now, any evidence of alibi is to be considered on the general case with the rest of the evidence and the defendant's statement, and, if a reasonable doubt of guilt is raised by the evidence as a whole, the doubt must be resolved in favor of the innocence of the accused." 746 F.2d at 1013–14.

**19.** Other examples of ineffective counsel cited by the defendant are: failure to view the crime scene and to interview witnesses; failure to object to hearsay testimony; failure to offer evidence in support of a venue motion; and failure to object to unauthorized communication between the jury and the bailiff.

witnesses and to present an alibi defense. The record contained affidavits by two witnesses which would have accounted for the defendant's whereabouts for some, but not all, of the critical time period in the case. Also submitted were affidavits by the defendant's mother, fiancee, and others which tended to undermine the testimony of two State witnesses. We commented:

> "We cannot conclude, based upon the record, that the defendant's legal representation was constitutional infirm. We are particularly hesitant to so hold based upon largely inconclusive and ex parte affidavits. The allegations of inadequacy of investigation and improper trial strategy are, we believe, better addressed in a habeas corpus proceeding where a court would have the benefit of an evidentiary hearing." 178 W.Va. at 427, 359 S.E.2d at 865.

The rule formulated in *Glover* and *Chamberlain* is a frank acknowledgement that claims of ineffective assistance of counsel are primarily bottomed on facts which cannot be adequately determined from the appeal record. These claims are more satisfactorily resolved through a habeas corpus proceeding, as many jurisdictions have already recognized. *E.g., People v. Phillips,* 41 Cal.3d 29, 711 P.2d 423, 222 Cal.Rptr. 127 (1985); *State v. Henderson,* 8 Conn.App. 342, 512 A.2d 974 (1986), *cert. denied,* 479 U.S. 1092, 107 S.Ct. 1304, 94 L.Ed.2d 159 (1987); *State v. Boyd,* 503 So.2d 747 (La.App.1987); *State v. Tracy,* 372 A.2d 1048 (Me.1977); *State v. Pettypool,* 67 Or.App. 13, 676 P.2d 368 (1984); *State v. Picotte,* 416 N.W.2d 881 (S.D.1987); *Walker v. Mitchell,* 224 Va. 568, 299 S.E.2d 698 (1983). We thus hold that where the record on appeal is inadequate to resolve the merits of a claim of ineffective assistance of counsel, we will decline to reach the claim so as to permit the defendant to develop an adequate record in habeas corpus.

## V.

Finally, the defendant claims that his sentence of life imprisonment is disproportionate to the crime committed and, therefore, in violation of W.Va. Const. art. III, § 5.

### A.

The defendant's first contention is based on an administrative rule of the Board of Probation and Parole (Board) relating to the eligibility for parole on life sentences. The circuit court's sentencing order and the commitment state that the defendant is to be imprisoned "for the remainder of his natural life." The defendant contends that under Board rule, C.S.R. § 92–1–4 (1983), he is never eligible for parole:[20]

> "Any inmate, in order to be eligible for consideration for parole, must meet the following prerequisites:
>
> \* \* \* \* \* \*
>
> "(3) If the inmate is serving a sentence designated in the committing court's sentencing order as 'Life with Mercy' he must have served ten (10) years of his sentence.
>
> "(4) If the inmate is serving a sentence which has been designated in the committing court's sentencing order as 'Life with Mercy' and has been convicted of felony crimes, twice before, he must serve fifteen (15) years of his life sentence. This provision shall apply regardless of the crime for which the life sentence was imposed.
>
> \* \* \* \* \* \*
>
> *"An inmate who is serving a sentence designated by the sentencing order as 'Life'* or 'Life without Mercy' shall not be eligible for parole." (Emphasis added).

Our starting point is the parole statute, W.Va.Code, 62–12–13, which reads in part: "No person sentenced for life may be paroled until he or she has served ten years, and no person sentenced for life who has

---

**20.** On June 7, 1988, the parties filed a joint stipulation which stated that the defendant would be eligible for parole after ten years. We, of course, are not bound to accept the stipulations of parties. As the issue presented is one of some importance which may evade our review in the future, we elect to reach it today. *See, e.g., State ex rel. Ayers v. Cline,* 176 W.Va. 123, 342 S.E.2d 89 (1985); *State ex rel. M.C.H. v. Kinder,* 173 W.Va. 387, 317 S.E.2d 150 (1984).

been previously twice convicted of a felony may be paroled until he or she has served fifteen years."

There are four criminal statutes which expressly authorize imposition of a life sentence.[21] Of these statutes, two render a defendant ineligible for parole consideration only if the jury fails to recommend mercy. W.Va.Code, 62–3–15, provides that where a defendant is convicted of first degree murder, and the jury does not recommend mercy, he is ineligible for parole "notwithstanding the provisions of [W.Va. Code] article twelve, chapter sixty-two." The kidnapping statute, W.Va.Code, 61–2–14a, contains identical parole eligibility provisions.[22]

The third life sentence statute, W.Va. Code, 62–8–2, which prohibits the killing of a prison officer or guard by a convict, expressly denies parole eligibility. It provides that the convict "shall be punished by confinement in the penitentiary for life, and such person shall not be released from such confinement on parole, notwithstanding the provisions of [W.Va.Code] article twelve, chapter sixty-two...."

In each of these three life sentence statutes, the Legislature has expressly provided how a life sentence interacts with parole eligibility under W.Va.Code, 62–12–13. For the crimes of first degree murder and kidnapping, a defendant is entitled to parole eligibility if the jury recommends "mercy." In the case of killing a prison guard or officer, the statute expressly provides that the parole statute does not apply.

We note that the aggravated robbery statute, W.Va.Code, 61–2–12, unlike the murder and kidnapping statutes, does not contain any language rendering a defendant ineligible for parole. It provides as

punishment for aggravated robbery confinement "in the penitentiary [for] not less than ten years." In Syllabus Point 2 of *Conley v. Dingess,* 162 W.Va. 414, 250 S.E.2d 136 (1978), *overruled on other grounds, State ex rel. Faircloth v. Catlett,* 165 W.Va. 179, 267 S.E.2d 736 (1980), we held that since the aggravated robbery statute contains no "maximum sentence of confinement ... the court, upon conviction, may impose a sentence of life imprisonment." Thus, by court interpretation the aggravated robbery statute was deemed to permit a life sentence. Nothing in the statute nor in *Conley* dictates that it is to be a life sentence with or without mercy.

■ The legislative framework under the parole statute is clear: parole eligibility generally becomes available on a life sentence once ten years have been served.[23] The exclusion of any parole eligibility is a separate consideration which is always specifically stated in the individual criminal statute. Thus, where a life sentence statute such as W.Va.Code, 61–2–12, contains no specific language prohibiting parole, the right to parole eligibility is available under our general parole statute. This result also obtains from our traditional rule that penal statutes must be strictly construed against the State. *E.g., State v. Nichols,* 177 W.Va. 483, 354 S.E.2d 415 (1987); *State v. Turley,* 177 W.Va. 69, 350 S.E.2d 696 (1986); *State v. Carper,* 176 W.Va. 309, 342 S.E.2d 277 (1986).

■ It is apparent that the Board, in framing its rule, had in mind the first degree murder and kidnapping statutes which use the term "life with mercy", in order to give parole eligibility. No such language is contained in the aggravated robbery stat-

---

**21.** W.Va.Code, 61–2–2 (first degree murder); W.Va.Code, 61–2–14a (kidnapping); W.Va.Code, 61–1–2 (treason); W.Va.Code, 62–8–2 (killing of prison guard by inmates).

**22.** The material language of W.Va.Code, 61–2–14a, is:

"[U]pon conviction, [the defendant] shall be punished by confinement in the penitentiary for life, and he, notwithstanding the provisions of article twelve [§ 62–12–1 et seq.], chapter sixty-two of this Code, shall not be

eligible for parole: Provided, that the jury may, in their discretion, recommend mercy, and if such recommendation is added to their verdict, such person shall be eligible for parole in accordance with the provisions of said article twelve...."

**23.** The one exception under W.Va.Code, 62–12–13, is where there is a life sentence and the defendant has two prior felony convictions. In this situation, parole eligibility does not occur until fifteen years have been served.

ute nor does the statute specifically prohibit parole eligibility. Consequently, the rule of the Board of Probation and Parole, C.S.R. § 92–1–4 (1983), to the extent that it prohibits parole eligibility on a life sentence under the aggravated robbery statute, W.Va.Code, 61–2–12, is invalid.[24]

### B.

 Having determined that the defendant's sentence does not deny him parole eligibility, we proceed to inquire whether the sentence is constitutionally disproportionate. W.Va. Const. art. III, § 5 provides, in part: "Penalties shall be proportioned to the character and degree of the offence." Very broadly, our proportionality jurisprudence sets out a two-tiered analysis. First, it must be determined whether the sentence under review "shocks the conscience," as we said in Syllabus Point 5 of *State v. Cooper*, 172 W.Va. 266, 304 S.E.2d 851 (1983):

> "Punishment may be constitutionally impermissible, although not cruel and unusual in its method, if it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity, thereby violating West Virginia Constitution, Article III, Section 5 that prohibits a penalty that is not proportionate to the character and degree of an offense."

 Second, we must determine whether the sentence is objectively reasonable. We stated the applicable rule in Syllabus Point 5 of *Wanstreet v. Bordenkircher*, 166 W.Va. 523, 276 S.E.2d 205 (1981):

> "In determining whether a given sentence violates the proportionality principle found in Article III, Section 5 of the West Virginia Constitution, consideration is given to the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, and a comparison with other offenses within the same jurisdiction."

Applying the *Cooper* and *Wanstreet* factors, we conclude that the defendant's life sentence is not disproportionate. We examine first the defendant's prior criminal record. The defendant was convicted of grand larceny in February, 1978, and was placed on probation. His probation was revoked in May, 1981, after the State proved that he had committed multiple criminal violations.[25]

Also significant for proportionality purposes are the circumstances of the robbery. The crime was indisputably violent and manifested an indifference to human life. The defendant presented a firearm and fired three shots in the course of the robbery. The potential for bodily harm or loss of life in such circumstances is apparent. We find the imposition of a life sentence, with parole eligibility in ten years,[26] to be within constitutional bounds.[27]

### VI.

For the reasons discussed above, the judgment of the Fayette County Circuit Court is affirmed.

AFFIRMED.

---

24. We also note that a defendant convicted of aggravated robbery is eligible for probation, provided the crime was committed without the use of a firearm. *State v. Massey*, 178 W.Va. 427, 359 S.E.2d 865 (1987). It would indeed be incongruous to allow eligibility for *probation*, but to deny eligibility for *parole*.

25. These violations, proved by clear and convincing evidence at the revocation hearing, included possession of a controlled substance and nonaggravated robbery.

26. This is, under the present statute, the equivalent of a determinate sentence of forty years.

27. The defendant also points to the lesser sentences received by Messrs. Adkins and Watters as evidence of disproportionality. While the existence of disparate sentences may be considered on the issue of disproportionality, it is not dispositive. We find that the defendant's culpability in the robbery was obviously greater than that of his codefendants.