382 S.E.2d 56

**STATE of West Virginia**

v.

**Raymond Douglas SNODGRASS.**

**No. 18672.**

Supreme Court of Appeals of West Virginia.

June 9, 1989.

G. Thomas Smith, Waters, Warner, & Harris, Clarksburg, for Raymond Douglas Snodgrass.

Edmund J. Matko, Pros. Atty., George P. Stanton, III, Asst. Pros. Atty., Clarksburg, for State of W.Va.

PER CURIAM:

This case is before the Court upon the appeal of Raymond Douglas Snodgrass from the November 19, 1986, order of the Circuit Court of Harrison County which denied the accused's motion for a new trial. The accused was convicted of aggravated robbery of Oram Fincham and sentenced on May 24, 1988 to serve ten years in the penitentiary. The primary ground of error assigned by appellate counsel is that the defendant was not given effective assistance of trial counsel. We affirm the conviction as the defendant has not overcome the presumption of effective assistance of counsel when his trial counsel chose to introduce certain evidence because the evidence supported a credible theory of the case.

Oram Fincham was robbed on his payday. He had a "few beers" that morning. There is conflicting evidence as to whether he continued drinking throughout the day of the robbery.

In the mid-afternoon, Fincham was introduced to the defendant, Snodgrass, by David Baldwin who was residing with Fincham. The defendant and Baldwin brought a jug of wine to Fincham's residence and Baldwin borrowed $10 from Fincham. The money came from Fincham's pay, which was contained in his wallet. Shortly thereafter, the defendant and Baldwin left the Fincham residence.

Early that evening, Fincham and another friend, Daniel Ables were at Fincham's residence. Ables brought beer. The defendant returned and asked Ables to go outside. Fincham testified that while Ables was outside, the defendant pulled a knife on him and demanded his wallet. Fincham gave the defendant the wallet. He then watched the defendant run from his residence, and briefly stop by a public mailbox. Ables then reentered the residence.[1] Fincham proceeded to walk one mile so that he could telephone the police and report the defendant. Ten minutes into the walk, Baldwin drove by and assisted Fincham in contacting the police.[2]

Very shortly thereafter, the police located the defendant and took him to the station house for questioning. He orally admitted to the investigating police officer that the wallet was in the public mailbox. The police retrieved the wallet, containing $53, from the mailbox. Several hours later, the defendant made a full written confession.

Defendant's trial counsel prevailed on a pretrial motion to suppress as involuntary the oral admission and written confession. After granting the motion, the trial judge specifically asked defendant's trial counsel if he objected to the wallet being introduced into evidence. Trial counsel stated that he did not.

The investigating police officer testified before the jury that the wallet was retrieved from the public mailbox. Without objection, the wallet and the $53[3] it contained was introduced into evidence.

1. Ables testified that Fincham drank a "few quarts" of beer just prior to the defendant's arrival. He corroborated Fincham's account regarding the defendant coming to the residence and asking him to leave. Ables neither heard nor saw anything after that time. He reentered the residence after the defendant left the area.

Ables testified during cross-examination that his only statement regarding the robbery occurred sixteen months after the incident when the police contacted him on the trial date.

Baldwin was never called as a witness.

2. Fincham, while testifying in the narrative, stated that he went to the police station, saw the defendant and said "there is the man." Trial counsel did not object.

Appellate counsel contends trial counsel should have objected to the statement, but has not briefed the issue. There is no evidence in the record that the police had attempted any type of pretrial identification of the defendant. Fincham (and the police) knew the accused by name and identified him as such over the telephone. The testimony of Fincham was unsolicited and was not used by the State for any purpose. Therefore, we see no reversible error in trial counsel's failure to object to the testimony.

3. At one point, Fincham testified that his stolen wallet contained "two or three" hundred dollars. Later, he testified that he may have had $150 in the wallet, less $20 he spent. The wallet con-

Rather than place any direct evidence before the jury, defendant's trial counsel relied exclusively on cross examination, during which time numerous inconsistencies and memory lapses were apparent from Fincham's testimony.[4] Upon a brief cross-examination of the investigating police officer by trial counsel, only one fact was elicited: that the police were able to locate the wallet because the defendant told them it was in the public mailbox.[5]

In his closing argument, defendant's trial counsel used: the sole fact he elicited from the investigating police officer (that the defendant told the police the wallet, containing the money, was in the public mailbox); Baldwin and Ables' comings and goings on the day of the robbery; and Fincham's inconsistent account of the robbery, to create reasonable doubt by allowing the jury to infer from the established facts that either Baldwin or perhaps Ables had robbed Fincham earlier in the day:

> We have got a fly in the ointment and a fellow by the name of David Baldwin.... [The investigating officer] testified that he knew the wallet was in the mailbox because [the defendant] told him it was in the mailbox. And Mr. Fincham ... said he didn't really see him put anything in anywhere, but saw him trot down the street and stop.... But another thing that fascinates [sic] me too if he is going to go out and commit a crime, and if he is going to do it, ... why would he walk in the house, tell Ables, you know, to get

out of here. Ables goes around the back of the house and stays a little bit. [The defendant] is supposed to have robbed Fincham, comes back out, runs up to the mailbox and throws the money in the mailbox. There is something not right and I don't know what it is. So that's why you are here. Whether it be David Baldwin, whether it be Mr. Ables, but something is just not right. I can't figure it out.... [The defendant] had told the officer where the wallet was and Mr. Fincham testified to what events occurred.... If you are going to rob someone, I am not going to tell you hey leave the room here a minute because I am going to rob you. Put the knife to him after being there ... earlier, take the wallet, the money still in it, and trot down to the mailbox, put it in the mailbox and tell the police officer the money is in the mailbox. There is something wrong.... Has the State proved beyond a reasonable doubt that he actually took that money from Mr. Fincham? ... The question that plagues me the most is where is David Baldwin? Why did Baldwin go there with [the defendant] and just what happened.... But as far as committing this crime, we've got a question and why wasn't David Baldwin here. Why did he [the defendant] tell [the investigating police officer] there is the wallet in the mailbox and why was there still money in the wallet. It doesn't make sense.[6]

> Q. In other words he told you the wallet was in the mailbox?
> A. Yes, Sir.
> Q. And I take it after that you went over and the wallet was in fact in the mailbox?
> A. [The patrolman] did....
> Q. Was there another suspect who has subsequently been released when you first got this information?
> A. Yes, sir.
> Q. And I believe that was David Baldwin, is that correct?
> A. Yes, Sir.

tained $53. The accused, who was apprehended very shortly after the incident, had $27 on him.

4. During cross-examination, Fincham testified that when Ables, who did not see the robbery, reentered the residence, Ables told Fincham that the defendant robbed Fincham. Appellate counsel also assigns as ineffective assistance, trial counsel's eliciting of this hearsay testimony. We find no prejudicial error since the statement shed suspicion on Ables and further undermined Fincham's credibility.

5. Following is a portion of the investigating officer's testimony:

> Q. How did you know to go and tell [the patrolman] to go and get the wallet out of the mailbox?
> A. Okay, I got the information from Mr. Snodgrass.

6. Counsel's opening statement also indicates, though less explicitly, his trial strategy:

> You have a wallet containing [$53] put in a mailbox. Now the state alleges [the defendant] robbed Mr. Fincham.... Did you or did you not steal my wallet? What circum-

The jury deliberated for one and one-half hours and convicted the defendant of aggravated robbery.

Appellate counsel views the wallet (containing the money) and the accused's oral statement to the investigating officer (concerning the wallet's location) as inculpatory evidence. Trial counsel did not move to suppress the wallet as "fruit of the poisonous tree" and actually elicited the testimony of the investigating police officer (that the defendant told him the wallet was in the public mailbox). Appellate counsel therefore contends that trial counsel deprived the accused of effective assistance of counsel as provided by U.S.C.A. Const. Amend. 6 and *W.Va. Const.* art. III, § 14. Syl. pt. 19, *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974).

▌ In syllabus point 21 of *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974), we articulated the standard of appellate review when counsel's trial strategy is attacked as ineffective:

Where a counsel's performance, attacked as ineffective, arises from occurrences involving strategy, tactics and arguable courses of action, his conduct will be deemed effectively assistive of his client's interests, unless no reasonably qualified defense attorney would have so acted in the defense of an accused.

▌ We also noted the burden of proof in such matters. The appellant must overcome the presumption of effectiveness by proving the allegation by a preponderance of the evidence. Syl. pt. 22, *Thomas, supra;* *State v. Reedy*, 177 W.Va. 406, 410, 352 S.E.2d 158, 162 (1986). If trial counsel's strategic choice is found, by a preponderance of the evidence, to be ineffective, trial counsel's actions are then subject to harmless error analysis.[7] Syl. pts. 19 and 20, *Thomas.*

▌ Trial counsel undertook the representation of the defendant, who had an extensive criminal record (Transcript of *in camera* proceeding, pgs. 73, 74), had signed a waiver of rights and confession, and told the police where the item he had confessed to stealing was located.

After trial counsel successfully suppressed the oral admission and written confession, he was still faced with the testimony of the victim, Fincham, concerning the defendant robbing him at knifepoint, running by the public mailbox, and stopping by it briefly. Trial counsel had no witnesses to the contrary.

Trial counsel chose between attempting to suppress the wallet (containing the $53), or allowing information relating to the wallet and the manner in which the police recovered it, to go before the jury. Suppression of the wallet was not guaranteed.[8]

---

stances—what were the surrounding circumstances? Who was present? What was going on? Was there any drinking going on? Was there any partying going on? The facts of the case are a little unusual....

7. Appellate counsel raises this issue on direct appeal to this Court. *See* syl. pt. 11, *State v. England*, 180 W.Va. 342, 376 S.E.2d 548 (1988). Appellate counsel contends that the record below clearly establishes that trial counsel's failure to suppress the wallet, and trial counsel's questioning of the investigating police officer (wherein the officer testified that the defendant told him the wallet was in the mailbox) evinces that trial counsel lacked "the normal and customary degree of skill possessed by attorneys who are reasonably knowledgeable of criminal law." Syl. pt. 19, *Thomas, supra.* However, the State contends that trial counsel's actions involved strategy and tactics; therefore, the proper standard of review is contained in syllabus point 21 of *Thomas.* We emphasize once again, normally, an evidentiary hearing wherein trial

counsel would have an opportunity to speak to the matter would be necessary to decide such an issue. *England, supra; U.S. v. Burgess*, 691 F.2d 1146 (4th Cir.1982). However, based upon the record before us, it is clear that trial counsel's actions were part of an overall strategy and in the interest of judicial economy, we will address the ineffective assistance contention, which is appellate counsel's sole assignment of error. *See U.S. v. Aulet*, 618 F.2d 182 (2nd Cir.1980).

8. The trial judge ruled that the oral admissions and written confession were involuntary. The police officer testified that he located the wallet because [the defendant] told him it was in the mailbox. Therefore, counsel could have made a motion to suppress the wallet. However, Fincham testified that he saw the defendant stop by the federal mailbox. *See Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984) and *State v. Davis*, 176 W.Va. 454, 345 S.E.2d 549 (1986), the inevitable discovery and independent source exceptions to the exclusionary rule.

Even if suppressed, Fincham's unrefuted testimony that the defendant robbed him at knifepoint would be sufficient for a conviction. *State v. England, supra.*

Instead, counsel chose to put the evidence before the jury. The wallet did not clearly link Snodgrass to the crime. By admitting the wallet, containing $53, into evidence, Fincham's credibility was undermined. Fincham had previously testified to differing amounts that the wallet allegedly contained, far in excess of $53. *See* note 3, *supra.* By eliciting from the investigating police officer that the defendant told the officer the wallet was in the mailbox, the jury could infer that either Baldwin or Ables robbed the victim. As counsel stressed in his closing argument, robbery, followed by the tossing of the loot in a relatively inaccessible location, when there is no threat whatsoever of apprehension, is inconsistent with guilt. Equally inconsistent with guilt is an accused's report to the police of the location of his loot.

Trial counsel challenged the State in meeting its burden of proof, beyond a reasonable doubt. His theory of the case, that Fincham was drunk and either Baldwin or Ables robbed him earlier in the day and placed the wallet in the mailbox was credible. Therefore, the appellant has not produced sufficient evidence to overcome the presumption of effectiveness by his trial counsel's strategic choice to introduce the appellant's statement to the police officer concerning the wallet, and to allow the wallet into evidence without objection. Syl. pt. 21, *Thomas.*

Based upon the foregoing, the judgment of the Circuit Court of Harrison County is affirmed.

Affirmed.