# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **M.M.-1, C.M., and B.M.**

**No. 19-0549** (Wood County 18-JA-87, 18-JA-88, and 18-JA-89)

**FILED**
**April 6, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother M.M.-2, by counsel Ernest M. Douglass, appeals the Circuit Court of Wood County's May 16, 2019, order terminating her parental rights to M.M.-1, C.M., and B.M.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Robin Bonovitch, filed a response on behalf of the children in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in (1) adjudicating the children as abused based upon erroneous findings; (2) terminating her parental rights to child B.M., when the DHHR presented no evidence that B.M. was abused or neglected and the circuit court made no finding that B.M. was abused or neglected; and (3) denying her request for a post-dispositional improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In June of 2018, the DHHR filed an abuse and neglect petition against petitioner and the father after a referral was made to Child Protective Services about child C.M., who broke his arm

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because one of the children and petitioner share the same initials, we will refer to them as M.M.-1 and M.M.-2, respectively, throughout this memorandum decision.

and did not receive proper medical treatment, despite multiple interventions by medical professionals. The petition alleged that a lack of timely professional care caused C.M.'s arm to be rebroken, reset, and delayed the healing process from "[four to six] weeks . . . to a [three-to-four-month-process.]" The petition further alleged that M.M.-1 accrued thirty-six-and-a-half days of unexcused absences and twenty-one tardy days during the previous school year. Petitioner acknowledged the children were late to school because of a "messed up" home structure and that the father was attempting to get C.M. medical checkups for his broken arm but "ha[d] been unsuccessful." In June of 2018, petitioner waived her right to a preliminary hearing, and the circuit court ratified the children's removal from petitioner's custody, with petitioner and the father receiving supervised visitation.

In July of 2018, the circuit court held an adjudicatory hearing on the allegations in the petition. At that hearing, petitioner, with advice of counsel, stipulated that she did not provide C.M. with "necessary medical care . . . in a timely manner" and that she "did not ensure the child [M.M.-1] was attending school." As a result, petitioner "admit[ted] to the abuse and neglect of the above-named children."[2] Petitioner stated that her stipulation was knowing, intelligent, and voluntary. The circuit court then accepted petitioner's stipulation that all three children were abused and neglected. After accepting the stipulation, the circuit court granted petitioner a six-month post-adjudicatory improvement period.

In January of 2019, the circuit court held a review hearing on petitioner's post-adjudicatory improvement period. At the hearing, the DHHR expressed concerns about petitioner's lack of compliance during the improvement period. Specifically, the DHHR's report indicated petitioner was "unemployed and even after encouragement . . . feels she doesn't need a job," "non-compliant . . . due to being late or not showing for her scheduled appointments," and "missing visits with her children." In March of 2019, the circuit court held a hearing, during which petitioner testified she enrolled in group therapy, attended an intake appointment for individual therapy, and received in-home services for parenting and attended each session. As a result of her latest attempts, petitioner requested a post-dispositional improvement period. The court did not rule on petitioner's motion, but continued the hearing to allow petitioner more time to "see if she can turn things around."

In May of 2019, the circuit court held a final dispositional hearing. At that hearing, several service providers testified that petitioner failed to substantially comply with the terms and conditions of her improvement period. Petitioner only sporadically attended and participated in parenting and adult-life skills classes, leading one provider to discharge petitioner for noncompliance. The provider further testified that petitioner "was chronically late for sessions and sometimes would not show up at all." An additional provider testified that petitioner missed multiple sessions, "never completed any of the homework she assigned, failed to complete companion services despite multiple warnings," and failed to improve the living conditions in the home. Finally, a provider who supervised petitioner's visits with her children testified that petitioner missed "approximately one visit per month and was late for every visit." As a result of petitioner's noncompliance, the DHHR opposed petitioner's motion for a post-dispositional improvement period because she was "very inconsistent" during the months she received services.

---

[2]The above-named children included all three named in the petition: M.M.-1, C.M., and B.M.

Following the hearing, the circuit court found that petitioner received ten months of services and made "very little progress" in that time. Ultimately, the circuit court concluded that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that it was in the best interest of the children to terminate petitioner's parental rights. Accordingly, the court terminated petitioner's parental rights by its May 16, 2019, order.[3] It is from this dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner alleges three assignments of error. In her first and second assignments of error, petitioner argues that (1) the circuit court erroneously adjudicated her as an abusing parent of all three children when the evidence was insufficient to support a finding of abuse as to all three children; and (2) the circuit court erred by terminating her parental rights to B.M. when there was no evidence of abuse or neglect of B.M.

Due to her failure to object to, or contest, her adjudication below, petitioner asks that we review these claims under the plain error doctrine. However, we have explained that the plain error doctrine is "to be used sparingly and only in those circumstances where substantial rights are affected, or the truth-finding process is substantially impaired, or a miscarriage of justice would otherwise result." Syl. Pt. 4, in part, *State v. England*, 180 W. Va. 342, 376 S.E.2d 548 (1988) (citation omitted). Given petitioner's affirmative stipulation to neglecting the children at issue, we decline to apply plain error on appeal.

This Court has held that

[w]hen a litigant deems himself or herself aggrieved by what he or she considers to be an important occurrence in the course of a trial or an erroneous ruling by a trial

---

[3]The children have achieved permanency by being placed in the father's custody with the petition against him being dismissed.

court, he or she ordinarily must object then and there or forfeit any right to complain at a later time. The pedigree for this rule is of ancient vintage, and it is premised on the notion that calling an error to the trial court's attention affords an opportunity to correct the problem before irreparable harm occurs.

*State v. LaRock*, 196 W. Va. 294, 316, 470 S.E.2d 613, 635 (1996). Moreover, "'[o]ur general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n. 20 (1999)." *Noble v. W.Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009).

Having reviewed the parties' arguments and the record on appeal related to petitioner's first and second assignments of error, the Court finds that petitioner waived her claims regarding the adjudication underlying her termination of parental rights by stipulating and silently acquiescing to the same. Petitioner voluntarily stipulated to her adjudication as an abusing and neglecting parent to M.M.-1, C.M. and B.M., thus inviting the circuit court to adjudge her as an abusing parent[4] as to all three children. Simply put, petitioner admitted to the sufficiency of the allegations and evidence against her by stipulating to her adjudication as an abusing parent of all three children. Thus, petitioner's waiver prevents her from raising the issue on appeal. Thus, this Court finds that petitioner is entitled to no relief in regard to her first and second assignments of error.

Petitioner's final assignment of error is that the circuit court erred by denying her motion for a post-dispositional improvement period because she "complied with multiple aspects of her [post-adjudicatory] improvement period and introduced sufficient evidence . . . she had experienced a change of circumstances." West Virginia Code § 49-4-610(3)(B) provides that a circuit court may grant a post-dispositional improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." Petitioner asserts that her participation in services during her post-adjudicatory improvement period was clear and convincing evidence that she would fully participate in a post-dispositional improvement period. We disagree and find no abuse of discretion in the circuit court's ruling.

Throughout petitioner's post-adjudicatory improvement period, her service providers repeatedly warned her about noncompliance in the form of her chronic lateness or complete absence at sessions; failure to acknowledge any parenting or life skills deficits; failure to complete assigned tasks; failure to make her home a suitable living environment for her children; and chronic

[4]In support of her first assignment of error, petitioner asserts because she stipulated only to neglect that the circuit court erred in finding that the children at issue were abused. However, West Virginia Code § 49-1-201 defines an abusing parent as follows: "'Abusing parent' means a parent, guardian, or other custodian, regardless of his or her age, whose conduct has been adjudicated by the court to constitute child abuse *or neglect* as alleged in the petition charging child abuse or neglect." (emphasis added). Given that petitioner stipulated to neglecting the children, it is clear that she met the statutory definition of an abusing parent. Accordingly, any assertion that a finding of abuse was in error does not entitle petitioner to relief.

lateness or complete absence for visits with her children. Even following petitioner's final review hearing where she was given another chance by the circuit court to "see if she can turn things around," she still failed to fully participate in services, acknowledging "her performance was not stellar." Although she did enroll in group therapy, complete the intake process for individual therapy, and receive in-home services for parenting, petitioner acknowledges "much of her participation came late in the process." This is especially concerning given petitioner's previous history of noncompliance during these proceedings. Taken holistically, the evidence contradicts petitioner's assertion that she was likely to fully participate in the terms of an additional improvement period. Additionally, because petitioner requested a second improvement period following her unsuccessful completion of the first, she was required to show that "[s]ince the initiation of the proceeding . . . [she] experienced a substantial change in circumstances . . . [and] that due to that change in circumstances [she][was] likely to fully participate in a further improvement period." *See* W. Va. Code § 49-4-610(3)(D). Although petitioner contends her "increased participation in services by the time of the dispositional hearings" constituted a substantial change in circumstances, based upon the record before this Court, we find this to be untrue. As a result, there was no substantial change of circumstances that warranted the granting of a second improvement period. Accordingly, we find no abuse of discretion in the circuit court's denial of a post-dispositional improvement period for petitioner.

Further, we find that the circuit court correctly terminated petitioner's parental rights. West Virginia Code § 49-4-604(b)(6) provides that circuit courts may terminate parental rights upon findings that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the children. Further, West Virginia Code § 49-4-604(c)(3) describes circumstances in which there is "no reasonable likelihood that conditions of neglect or abuse can be substantially corrected" and specifically includes a circumstance in which the abusing parent has

> not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

Here, petitioner failed to avail herself of the services offered during her post-adjudicatory improvement period and, in fact, was discharged for noncompliance by one provider. Additionally, petitioner missed approximately one visit per month with her children, and was late for every visit she attended. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) (citations omitted). Petitioner contends she attended "the bulk of her visits . . . from the very beginning." However, the evidence showed that petitioner still missed several visits and the visits she had were "chaotic and disorganized," including petitioner repeatedly leaving during the visits to smoke, go to the bathroom, or the store. We have long held that

5

"[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4. The circuit court provided petitioner multiple opportunities to improve her interactions and parenting when with her children. Yet, even with the support systems in place and services provided, petitioner did not consistently attend services and did not correct the conditions of neglect. As petitioner failed to remedy the conditions giving rise to the petition, the circuit court found the children's welfare would continue to be threatened if returned to her care. Accordingly, it was necessary for the children's welfare to terminate petitioner's parental rights. While petitioner argues that the circuit court should have employed a less-restrictive dispositional alternative, we have held that

"[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Accordingly, we find no error in the decision of the circuit court, and its May 16, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: April 6, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

6